THE STATE v. AMMA ELLIS.

*Homicide—Provocation—Evidence—Judge's Charge.*

Where, upon a trial for murder, it was shown that the prisoner and his brother went to the house of deceased (their father) in his absence, when prisoner complained to deceased's wife of the conduct of a younger brother and threatened to whip him if his father did not, and also expressed bad feeling toward his father; that prisoner and his brother then sharpened their knives, when the latter said, " Some one will be surprised to-night," to which prisoner assented; that they remained until the father arrived, when an altercation began between him and the prisoner, resulting in a combat in which the father was killed by a stab; that there was conflicting evidence as to the circumstances of the fight, and whether the prisoner acted in self-defence, or whether he struck from malice or from heat of passion; and it further appeared that he uttered heartless expressions toward his father after the fatal blow : *Held,*

1. That the declaration of the brother to the prisoner while sharpening the knives was competent.

2. That it was not error in the Court to instruct the jury, after having charged them in respect to the law of self-defence and manslaughter, that if the provocation was slight and the prisoner used excessive force, out of all proportion to the provocation, the prisoner was guilty of murder.

Indictment for MURDER, tried before *Merrimon, J.,* at Fall Term, 1888, of the Superior Court of SAMPSON County.

There was a verdict of guilty, judgment, and appeal.

The prisoner, Amma Ellis, was charged in the indictment with the murder of James Allen Ellis. It was in evidence that he went to the house of the deceased, who was his father, on the evening of September 4th, when the sun was about one and three-quarters or two hours high. The deceased was not at home when the prisoner went to his house, but came later in the evening and before dark.

Susan Ellis, the wife of the deceased and step-mother of the prisoner, testified, among other things, in substance, that she " was at home when the prisoner came; that he complained that Holmes, a younger brother, had been 'scandalizing' him; that he said he was going to stay till the deceased came home and tell him about it, and if he did not whip Holmes he (the prisoner) would."

There was evidence tending to show the bad temper of the prisoner, and the witness testified that she told him " it was not worth while to wait and have a fuss with his father." It was in evidence that William Ellis (a brother of the prisoner, who had been included in the bill of indictment with the prisoner, but as to whom the Grand Jury returned " not a true bill") was in company with the prisoner; that each had a knife, which was sharpened at the grindstone; that the prisoner turned the grindstone for William to sharpen his knife, and William turned the grindstone for the prisoner while he sharpened his knife. The witness testified that

." while he was grinding his knife they (prisoner and William) both laughed; Will. said, 'somebody will be surprised to-night,' and Amma (the prisoner) said, 'somebody will be surprised to-night.' They finished grinding their knives, went into the house, got a whetstone and whetted their knives. Then they stood around there till the sun got low."

The prisoner excepted to the admission of the declaration of William Ellis made while he and the prisoner were grinding their knives. This is the first exception presented in the record.

There was much evidence introduced, without objection, as to what was done and said by the prisoner after he went to the house of the deceased and before the deceased came home, tending to show ill will against his younger brother Holmes (who came home with his father), and also dissatisfaction with the deceased.

The other facts necessary to an understanding of the questions presented are stated in the opinion.

*The Attorney General,* for the State.
No counsel for the defendant.

DAVIS, J. (after stating the case.) The declaration of Will. Ellis, by itself, would not have been admissible as evidence, but he and the prisoner were engaged in a conversation ; it was shortly preceding the homicide; the declaration was a part of the conversation, and the response of the prisoner made it his own declaration. The conduct of the prisoner just prior to the mortal blow, his acts and declarations, the fact that he had a knife (there was evidence tending to show that "he kept muttering about whipping the boy, Holmes, walking about with his knife open"), were competent circumstances to go to the jury, to be considered by them in determining the character of the homicide. *State* v. *Gooch,* 94 N. C., 987.

" It was admitted that the prisoner killed the deceased with a deadly weapon."

The evidence was conflicting. There was evidence on the part of the State tending to show malice. There was evidence on behalf of the prisoner tending to show that he was going away from the house of the deceased when the deceased rushed upon him and gave him a heavy blow on the back of the head with a thick plank or post, and was in the act of repeating the blow when the prisoner " struck back-handed " the fatal blow.

There was evidence on the part of the State tending to contradict this, and to show that the deceased "had nothing in his hand" when the fatal blow was given; that the deceased " had run across the yard to him (the prisoner) and told him to leave there or he would knock him down;" that he had nothing to strike with but his hand, and the prisoner had the knife open in his hand and struck the fatal blow.

In charging the jury his Honor instructed them, among other things, that it was for them to say "from the evidence, whether the killing was done because of a deliberate intent to kill previously formed, or because of the present provocation, or in self-defence. That if the killing was done with malice aforethought, then it was murder; but if it was done, not because of malice aforethought, but because of present provocation, then it was manslaughter. That if the defendant had started away from the house of the deceased, and the deceased rushed after him and struck him a blow upon the back of the head with a plank or post and was in the act of striking him again, and the prisoner stabbed and killed the deceased because it was necessary for him to do so to protect his own life or to avoid great bodily harm, then there would be no offence, but the killing would be excusable homicide;" and upon these several points the testimony of the several witnesses was recited to the jury.

Upon the question of murder his Honor further said to the jury that if the provocation was slight and the prisoner used excessive force, out of all proportion to the provocation, the killing would be murder, although the prisoner may not previously have formed a design to kill the deceased, and upon this point the testimony of the witnesses as to the immediate circumstances attending the stabbing was called to the attention of the jury, and it was left to them to say whether the provocation was slight and whether the prisoner used excessive force, out of all proportion to the provocation. The prisoner excepted upon the ground that the principle embraced in that part of the charge in regard to provocation and excessive force had no application to this case and was not supported by any evidence. This is the second exception.

We have not deemed it necessary to set out in detail the evidence as presented in the record, but we think there is no error in the charge of his Honor of which the prisoner could complain, for upon a review of all the evidence we feel constrained to say the most exculpatory parts of it are rendered nugatory by the conduct of the prisoner after the killing, about which there is little conflict.

The prisoner's own evidence shows an absolute want of all concern for the deceased after the blow was inflicted, while other evidence tended to show heartless exultation. It was in evidence that he said : " You may holler, G—d d—d you; I have cut you to your liver," and that upon the refusal of Will. to go for the doctor, he said, " That's right."

The charge of his Honor was as favorable to the prisoner as the evidence would warrant, and is fully sustained in all its aspects by rulings in *State* v. *Gooch*, 94 N. C., 982 ; *State* v. *Chavis*, 80 N. C., 353 ; *State* v. *Curry*, 1 Jones, 280, and *State* v. *Jarrott*, 1 Ired., 76.

Affirmed.