STATE v. ALBERT SHOUSE.

(Filed 8 April, 1914.)

1. Homicide—Dying Declarations—Trials—Evidence.

Where the prisoner shot the deceased, causing death the following day, and there is evidence that the deceased was informed by his attending physician that he could not recover from the wound, and that he was aware of its fatal nature, his declarations are competent evidence against the prisoner upon trial for the homicide.

2. Homicide — Deadly Weapon—Trials—Presumptions—Evidence— Appeal and Error—Harmless Error.

Upon the trial for murder, the law presumes malice from the killing with a pistol shot, and it is for the prisoner to show that the shooting was done under such circumstances as would justify the act or render it manslaughter; and where the jury has returned, in such case, a verdict of murder in the second degree, errors committed in admitting evidence of previous threats upon the question of premeditation and deliberation necessary for conviction of murder in the first degree are rendered harmless.

APPEAL by defendant from *Lane, J.,* at December Term, 1913, of FORSYTH.

Indictment for murder. The defendant was convicted of murder in the second degree, and from this judgment pronounced, appeals.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Louis M. Swink, W. T. Wilson for defendant.*

Brown, J.   The prisoner has been convicted of the crime of murder in the second degree in the killing of one James Webster on 12 October, 1913.

The testimony of the witnesses for the State tended to show that on 22 October the deceased was at the house of one Jess Anthony.   While the deceased was sitting on the doorstep the prisoner came around the corner of the house and threw a rock towards the deceased, hitting him on the foot, and the deceased said, "Look out, Al."

The prisoner immediately jerked out a pistol and pointed it at the deceased and shot.   The bullet entered near the extreme lower part of the bowel and was extracted a little above the small of the back.   He died the following day.

The first five assignments of error are directed to the ruling of the court admitting the dying declarations of the deceased.

It is contended that the deceased, when he made the declarations, was not in such condition of mind and body as rendered the declarations competent.

The witness James Holmes testified that he saw the deceased on the evening of the day on which he was shot, and he said to the witness that he was in bad shape.   Deceased said: "I know I am going to die from the wound."   Jim Webster, Sr., father of the deceased, said that he told witness that he was bound to die.

Dr. D. C. Speas testified that when he had examined the deceased, he made a statement to him about the result of the wound.   "I told Jim Webster there was very little chance, if any, for him, and in my estimation there was none.   I administered medicine to revive him.   He asked me if he could get well, and I told him no."   This witness testified on his first examination: "I found the patient very much depressed, suffering from shock due to the wound."

The declarations of the deceased, together with the evidence as to his actual condition, justified the admission of his statement as to what occurred at the time of the shooting.

In *S. v. Bagley,* 158 N. C., 608, we said: "It is not always necessary that the deceased should declare himself that he be-

lieves he is about to pass away, but all the circumstances and surroundings in which he is placed should indicate that he is fully under the influence of the solemnity of such a belief."

The principle upon which these dying declarations are admitted is that they must be made by one who is in a condition so solemn and awful as to exclude the supposition that he could be influenced by malice, revenge, or any conceivable motive· to speak anything except the truth. *S. v. Williams,* 67 N. C., 12; *S. v. Moody,* 3 N. C., 31; *S. v. Jefferson,* 125 N. C., 712.

All the evidence shows clearly that the deceased was in such condition when the declarations were made.

The three remaining assignments of error relate to the admission of certain threats.

William Crutchfield, a witness for the State, testified that when the prisoner returned from Virginia about three weeks before Webster was killed, the prisoner told witness that he had killed one man, and was going to kill two more, and then he would be willing to die and to go to torment like. his brother.

Annie Dean, a witness for the State, testified that when the prisoner came to her house about three weeks before Webster was killed, that he said he had got in some trouble in West Virginia, that he had killed a man and left him in the mountains, and never expected to rest until he had killed two more; said he was going to kill two more, and that would be as many as his brother had killed; he said one time he thought he wanted to go to heaven, but now he wanted to go to hell.

We admit the principle that general threats to kill not shown to have any reference to the deceased are not admissible in evidence, but a threat to kill or injure some one not definitely designated is admissible in evidence, where other facts adduced give individuation to it. 21 Cyc., 922.

But these threats were offered to show premeditation, deliberation, and previous express malice, necessary to convict of murder in the first degree. *S. v. Tate,* 161 N. C., 280.

They were practically irrelevant, unnecessary, and harmless, as prisoner was acquitted of the capital felony.

The prisoner admitted that he killed the deceased with a deadly weapon. He testified: "I was playing with the deceased. I pitched a rock at the deceased, and he said, 'Look out, Al.,' and I went to get my gun and went to pull it out, and it got caught, and went off. I was about 14 feet from the deceased. My coat was on my right arm. I am a right-handed man. I carried the rock with my left hand. I reached to get the pistol with my left hand, and my finger caught it, and it went off."

The killing of the deceased (who admittedly was unarmed and engaged in no unlawful act) with a deadly weapon being admitted, the law presumes malice, and it was the duty of the jury to convict of murder in the second degree unless the prisoner satisfied them that the killing was done under such circumstances as justified the act, or reduced it to manslaughter. This he failed to do.

We have examined the record, and find

No error.