STATE v. I. J. BURTON.

(Filed 22 November, 1916.)

**1. Homicide—Second Degree—Submission—Arguments to Jury—Conclusion.**

Where the defendant upon trial for a homicide admits of record the killing with a deadly weapon, and the solicitor states he will not ask for conviction of murder in the first degree, the fact that the defendant assumes the burden of showing matter in mitigation or excuse does not entitle him as a matter of right to open and conclude the argument to the jury, for this rests within the discretion of the trial judge.

**2. Homicide—Threats—General Malice—Evidence—Trials.**

Where upon the trial for a homicide the evidence discloses that at night the defendant was annoyed by boys knocking on the door to his store and dwelling and running away, threats made by the defendant before the homicide that he would kill one of them the next time are competent evidence, as tending to show general malice, where he has carried the threat into execution.

**3. Homicide—Evidence—Age—Trials.**

Where there is evidence tending to convict the defendant of killing one among a number of boys who had been annoying him at night, testimony as to the age of the boy who was killed is competent when merely a part of the history and circumstances of the case identifying the deceased.

**4. Homicide—Evidence—Character—Admissions.**

Upon a trial for a homicide after the defendant had admitted killing another, for which he had been tried, testimony of a witness that as an officer of the law he had served the warrant for that offense is not prejudicial, or a variance of the rule that only testimony as to general character is permissible.

STATE *v.* BURTON.

**5. Homicide—Deadly Weapon—Admissions—Burden of Proof.**

 Where the killing is admitted to have been done with a deadly weapon, the burden of proof is upon the defendant to show matters in self-defense which would excuse the killing.

**6. Instructions—Contentions—Appeal and Error.**

 A mistake made by the judge as to the contentions of a party, in his charge, must be called to his attention at the time, or exception thereto will not be considered on appeal.

**7. Homicide—Evidence—Interest—Trials—Instructions.**

 Upon a trial for a homicide wherein the defendant has testified in his own behalf, it is proper for the judge to charge the jury to consider his evidence in relation to the case, the interest he had in the result of the verdict, and to scrutinize his testimony with care in determining the credence they would give it.

**8. Trials—Juries—Officer in Charge—Remarks—Appeal and Error.**

 A remark to the jury by the officer having them in charge while deliberating upon their verdict, that the judge would keep them until Sunday, though authorized by the judge, would not be reversible error.

APPEAL by defendant from *Carter, J.,* at May Term, 1916, of GASTON.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*S. J. Durham for defendant.*

CLARK, C. J. This appeal is from a verdict and judgment for murder in the second degree. The defendant kept a small store in Bessemer in which he took his meals and slept. For several nights he had been annoyed by persons rousing him by knocking at the door and then running off. On the night of the homicide, about 10 o'clock, the deceased, a boy of 16 years of age, went with several other boys to the store and threw a piece of wood against the door and then ran off. The defendant shot at them, and killed the deceased, the bullet passing near the heart and producing instant death.

 The witness Dees testified that, hearing the report of a pistol and looking out, he saw the deceased fall, and before he got to him he was dead, lying on the ground with a bullet wound under his left shoulder blade; that defendant said, "I killed him," but added, "I didn't aim to kill him; I intended to shoot him in the legs"; that he also heard the defendant say, as the deceased was running away after being shot, "Oh, yes, God damn you! I will learn you how to prowl around my place here at night."

 This witness testified that he was at defendant's place at 6 or 7 o'clock that evening to get some tobacco, and that when he walked into his

place the defendant had a pistol out, wiping out the barrel. The witness said to him, "You are fixing to go to Germany." He said, "No; but I am going to kill a damn son of a bitch." I said, "Don't talk that way; you are too old a man to have such talk," and went in behind the counter and got the plug of tobacco. He said, "I bet you $50 I kill a man tonight." I said, "Mr. Burton, you should not talk that way. It costs something to kill a man in this country." He said, "I expect to kill the first God damn man that taps on my door tonight. I am going to push this door shut and sit down here by it, and the first man that taps on this door I expect to kill him." I said, "You should not talk that way; possibly I should want something in here; how am I to get into the door unless I was to tap?" He said, "It don't make any difference. You heard what I said: the first God damn man that taps on my door tonight I expect to kill him." He further said that the moon was full, bright, and clear. Another witness, Hodges, also testified that the defendant that evening was cleaning his pistol and stating what he would do if any one came around bothering him that night.

The solicitor stated in open court that he would not ask for a verdict of murder in the first degree, but only for a verdict of murder in the second degree, or manslaughter, as the evidence might warrant, whereupon the defendant admitted of record that he killed the deceased with a deadly weapon. He further admitted that he had been convicted of the careless handling of firearms, resulting in the death of his brother, for which he had served a sentence of twelve months. The court refused the motion of the defendant to open and conclude the evidence and argument, and defendant excepted.

The right to open and conclude the argument, except in cases where the defendant introduces no evidence, is in the discretion of the court, and the exercise of such discretion is not reviewable upon appeal. *S. v. Anderson,* 101 N. C., 758. The mere fact that the defendant had assumed the burden of showing matter in mitigation or excuse did not entitle him to open and conclude. 12 Cyc., 536.

Exceptions 2, 3, and 5 are to the above, but evidence as to the conduct and declarations of the defendant the afternoon before the homicide showing preparation and threats was admissible as tending to show general malice. *S..v. Shouse,* 166 N. C., 306. "Threats made by defendant against a class to which deceased belonged, and prima facie referable to deceased, although his name is not mentioned, are admissible against defendant." 21 Cyc., 932. Nor can we sustain the exceptions to the testimony that the deceased was a boy 14 or 15 years of age. There was no testimony of any fight, and this was merely a part of the history and circumstances of the case, showing who the deceased was.

Exception 7 cannot be sustained. A party introducing a witness as to character can only ask him as to general character and reputation, and not as to his personal dealings with the defendant, and it was no error for the court to so hold. *S. v. Hairston,* 121 N. C., 579. The defendant having gone on the stand as a witness in his own behalf, it was competent in cross-examining a character witness introduced by him to ask if he had not heard the defendant accused of several crimes. The witness replied he had not, though he had served the papers when the defendant was in court for killing his brother, which the defendant had already admitted, and he had served papers on him in another case in which he was found not guilty. There was no prejudice sustained by the prisoner in this respect.

Exception 10 is that the court instructed the jury that the defendant having admitted the killing with a deadly weapon, the burden was upon him to excuse the killing on the principle of self-defense, which was correct. The court further told the jury that if the defendant did not fire at the deceased at all, but being suddenly alarmed by being stricken by a stick of wood thrown when he opened the door, whereby he was reasonably caused to fear that a deadly and dangerous assault was being made upon him, and he fired into the ground to warn such person that he was armed and prepared to defend himself, and the jury are satisfied of that state of facts, the defendant would not be guilty of any offense; but that if the defendant saw the deceased running away, and then discharged his pistol for the purpose of frightening and warning the deceased, but not designing to hit him at all, then the killing under those circumstances would be manslaughter only.

The exceptions for stating the contentions of the State cannot be sustained. If there was any mistake in making them, which does not appear, it was the duty of the defendant to then and there have called the attention of the court to the matter, for correction. *S. v. Cameron,* 166 N. C., 384; *S. v. Blackwell,* 162 N. C., 672; *Jeffress v. R. R.,* 158 N. C., 215.

The court charged the jury, in passing upon the evidence: "When you come to consider the evidence of the defendant himself, remember his relation to the case as defendant, the interest which he has in the result of your verdict, and to scrutinize his testimony with care, to the end that you may determine to what extent, if any, his testimony has been biased by his interest."

This was not erroneous, *S. v. Fogleman,* 164 N. C., 462, in which the Court approved the charge in almost the identical language here used, saying: "It calls fairly the attention of the jury to the attendant circumstances which might bias their testimony and left the jury to

judge what weight and effect they should give it." The court placed the matter beyond misconception by immediately adding, as to the defendant's testimony: "You will consider his demeanor upon the witness stand, his manner of testifying, both upon direct and cross-examination; his expression, frankness and clearness in testifying, or lack of such qualities in his testimony; the reasonableness or unreasonableness of the account he has given you of the matter about which he has testified, the credibility or incredibility of his testimony, all the evidence tending to show his general character, all the evidence offered upon his part tending to show that it was good and evidence offered upon behalf of the State tending to show it was bad."

. The court further charged: "The defendant relies upon the evidence which he has offered of his good character not only for the purpose of corroborating his testimony in the case, but he relies upon it substantively and contends that notwithstanding the trouble that he may have had in former years, that in view of his character which he has shown to you, he contends that you should be slow to believe that a man of the character which he has disclosed here would have intentionally taken human life.

"Now, gentlemen, you will weigh and consider this evidence in all of its bearings. If it satisfies you beyond a reasonable doubt that the defendant slew the deceased with malice, you will convict him of murder in the second degree. If you fail of murder in the second degree, you will then consider as to whether or not he is guilty of manslaughter. If the evidence satisfies you beyond a reasonable doubt that he unlawfully slew the deceased, but without malice, you will convict him of manslaughter. If you fail to find him guilty either of murder in the second degree or of manslaughter, of course, gentlemen, your verdict will be 'Not guilty.' "

There was more evidence along the same line that the defendant said "I am going to get the first man that strikes the door tonight," and that after the killing, when asked who shot the defendant, replied, "It was me. I was shooting at some damn rascal. He was knocking on my door with a pole."

The conduct of the boys was very annoying, but the defendant had his recourse by appealing to the officers of the law. He chose to take the law in his own hands, and killed the deceased. From the charge of the court, if the jury had found that the defendant merely fired in the ground, but by chance struck the deceased, they would have found him guilty of manslaughter. As it was, his preparation and threats that afternoon to shoot might have justified the jury in finding him guilty of murder in the first degree, for it tended to show premedita-

tion and deliberation, especially as it was a·bright moonlight night and there was evidence that he fired at the deceased. The jury found that under all the circumstances the presumption of malice arising from the use of a deadly weapon was not rebutted, and found the defendant guilty of murder in the second degree.

The remark of the officer to the jury on Friday, that if they did not agree earlier the judge would keep them together till Sunday, was as to a matter resting in his discretion, and would not be ground for a new trial, even if the judge had authorized the officer to so tell the jury. *Hannon v. Grizzard,* 89 N. C., 115; *Osborne v. Wilkes,* 108 N. C., 651; *Bank v. Gilmer,* 116 N. C., 684.

No error.