STATE v. CLAUDE BOWSER, JR.

(Filed 12 October, 1938.)

**1. Homicide § 3—**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation.

**2. Homicide § 16—**

The intentional killing of a human being with a deadly weapon implies malice and, if nothing else appears, constitutes murder in the second degree.

**3. Same—**

Premeditation and deliberation are not presumed from an intentional killing with a deadly weapon, but must be established beyond a reasonable doubt.

**4. Homicide § 4c—**

Premeditation means thought beforehand for some length of time, however short.

**5. Same—**

Deliberation implies an intention to kill executed by defendant in a cool state of blood in furtherance of a fixed design.

**6. Homicide §§ 20, 21—**

Evidence of threats made by defendant are competent upon the question of malice, and upon the question of premeditation and deliberation.

**7. Same—Testimony of threats held competent, the threats having been given sufficient individuation.**

While threats must be directed against the victim with sufficient certainty, testimony of general threats is competent when the other evidence gives individuation to the threats, and testimony that defendant threatened to "kill a girl" *is held* competent when taken in connection with evidence that defendant had been going with deceased and killed her within two and a half hours after making the threat, with further evidence tending to show specific threats against her.

**8. Homicide § 21— .**

The conduct of defendant before and after, as well as at the time of, the homicide, and the manner of the killing are competent on the question of premeditation and deliberation.

**9. Homicide § 25—Evidence held sufficient to be submitted to the jury on question of defendant's guilt of first degree murder.**

Evidence that defendant made threats against deceased shortly before the homicide, that after he had killed his victim he was cool and collected and stated he had committed the act, and thereafter told officers he had killed her because he loved her, together with evidence of the peculiarly atrocious manner in which he cut her throat and killed her, *is held* sufficient to be submitted to the jury on the question of defendant's guilt of murder in the first degree.

**10. Homicide § 27b—**

Where the court defines murder in the first degree and murder in the second degree and correctly places the burden of proof on the State, and defines reasonable doubt, failure to charge on the presumption of innocence will not be held for error.

**11. Criminal Law §§ 5a, 5d, 53e—Instruction on defense of insanity held without error.**

The defense of insanity is an affirmative defense which admits defendant's commission of the act but denies criminal responsibility therefor, and therefore in a homicide prosecution in which defendant pleads insanity, an instruction that if the jury should find that at the time defend-

ant killed deceased, he was incapable of having a criminal intent, etc., will not be held for error as an expression of opinion by the court as to whether the evidence sufficiently showed defendant killed deceased.

**12. Criminal Law § 53g—**

Objection to instructions on the ground of a misstatement of the evidence in stating a contention of the State will not be sustained when the matter is not called to the court's attention at the time.

APPEAL by defendant from *Burgwyn, J.,* at April Term, 1938, of HALIFAX.

Criminal indictment for the murder of one Lizzie Bowser.

The State introduced evidence tending to show that: Lizzie Bowser was killed on the night of 22 February, 1938. On that night, she, Dora Bowser and Gertrude Brown together attended school exercises at the London Schoolhouse between Littleton and Roanoke Rapids. A few minutes after Lizzie went into the school building defendant, who was sitting in an automobile with Levi Epps, said: "The law is looking for me because I have killed a girl." To Levi's remark that he had not because, if he had, he would be running, defendant replied: "No, I ain't killed nobody, but I is." Defendant and Lizzie Bowser had been going together. She had talked to him at her home earlier that evening. Then, apparently, they were friendly.

When the school exercises, which in the various estimates of witnesses lasted from an hour to two and a half hours, were over, A. Brinkley Pierce joined Dora Bowser, and they, followed by Lizzie Bowser and Gertrude Brown, started walking home. As they reached the road in going from the school grounds the defendant came up beside Lizzie Bowser, who said to him: "Bud, you might as well go on home. I told you you could not go home with me tonight." Then she and Gertrude Brown walked on up the road. When they reached the mail box at the entrance to the path that leads to her home, Lizzie Bowser and Gertrude Brown stopped, but Dora Bowser and A. Brinkley Pierce walked on along the path. Alex Powell came along then, as did the defendant. Lizzie Bowser called to Alex Powell and said that she had something to tell him. She walked toward Alex Powell. The defendant walked up behind her and said something to her. She then stated to Alex Powell, "That is all right, I will tell you another time." Whereupon Alex Powell went up the road, and Lizzie Bowser again said to defendant: "Bud, you might as well go on home. I told you you were not going home with me tonight." Then she started to run and ran up the path. Defendant also ran, following close behind her. As she passed by, she said, "Come on, Gertrude," but did not appear to be frightened. Gertrude testified that in a very short time she heard Lizzie holler twice. Dora Bowser and A. Brinkley Pierce also heard her and stopped and

turned back to go to her. They found her one hundred eighteen steps away lying in the path. This point was one hundred twenty steps from where Gertrude Brown was when she heard her. She was dead. Before they reached her, defendant called to Brinkley and said: "A. B., come here and get Lizzie. I done killed her." To Brinkley's question: "What in the world were you thinking about?" defendant made no reply but walked on down the path. He had met them about half the distance from where they turned back and the body. He had a knife in his right hand and it was bloody. Lizzie Bowser's throat was cut on the right side and on the left side with only a small place in front and a small place in the back that were not cut in two. There were signs of scuffling in the path.

Defendant was arrested about 1 a.m. that night at the home of his father about three-quarters of a mile away. When officers reached the house defendant was standing in the middle of the floor. On being asked for his knife, he gave it to the officer. It was bloody. He had told his father and mother that he had killed the girl. The officer asked him: "Why did you kill that woman?" He said: "I killed her because I loved her, and I told her if I ever caught her I was going to kill her." He told the officer that "the girl had her head lying on his shoulder when he cut her throat on the right side and then turned her head over and cut her on the left side."

While defendant was in jail, he demonstrated to Sheriff Riddick how he and Lizzie stood when he cut her, and how he cut her on both sides. Then he told the sheriff that he ran his finger in her throat, put his knife under the windpipe and cut it in two. Also, while defendant was in jail, on being asked by the clerk of Superior Court why he killed the girl, he again stated that he killed her because he loved her. Then he described the killing and told a story to the effect that the girl was pregnant and that they couldn't get married, and that they wanted to get out of it the best they could. There was testimony to the effect that the girl was not pregnant. Defendant did not go upon the stand, but relied upon plea of transitory insanity and offered testimony tending to show insanity of his grandmother, and tending to show incidents of curious ways and peculiar conduct on his part. The State offered evidence *contra.*

Verdict: Guilty of murder in the first degree.

Judgment: Death by asphyxiation.

Defendant appeals to Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*Kelly Jenkins and Irwin Clark for defendant, appellant.*

WINBORNE, J.   (1) The exceptive assignment principally pressed on this appeal is the refusal of the court to allow defendant's motion for judgment as of nonsuit on the first degree murder charge made in compliance with the statute.   C. S., 4643.   The motion challenges the sufficiency of the evidence to show premeditation and deliberation beyond a reasonable doubt.   *S. v. Bittings,* 206 N. C., 798, 175 S. E., 299, and cases cited.

It is pertinent, therefore, to refer to principles applicable to the case in hand.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation.   C. S., 4200. *S. v. Payne,* 213 N. C., 719, 197 S. E., 573, and cases cited.

The intentional killing of a human being with a deadly weapon implies malice and, if nothing else appears, constitutes murder in the second degree.   *S. v. Payne, supra,* and cases cited.

"The additional elements of premeditation and deliberation, necessary to constitute murder in the first degree, are not presumed from a killing with a deadly weapon.   They must be established beyond a reasonable doubt, and found by the jury, before a verdict of murder in the first degree can be rendered against the prisoner."   *S. v. Miller,* 197 N. C., 445, 149 S. E., 590; *S. v. Payne, supra.*

"Premeditation means 'thought beforehand' for some length of time, however short."   *S. v. Benson,* 183 N. C., 795, 111 S. E., 869, at p. 871; *S. v. McClure,* 166 N. C., 321, 81 S. E., 458; *S. v. Payne, supra,* 197 S. E., 579, and cases cited.

"Deliberation means that the act is done in cool state of blood.   It does not mean brooding over it or reflecting upon it for a week, a day or an hour, or any other appreciable length of time, but it means an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose, and not under the influence of a violent passion, suddenly aroused by some lawful or just cause or legal provocation."   *S. v. Benson, supra; S. v. Payne, supra.*

Evidence of threats are admissible and may be offered as tending to show premeditation and deliberation, and previous express malice, which are necessary to convict of murder in the first degree.   *S. v. Payne, supra,* and cases cited.

"General threats to kill not shown to have any reference to deceased are not admissible in evidence, but a threat to kill or injure someone not definitely designated are admissible in evidence where other facts adduced give individuation to it."   *S. v. Shouse,* 166 N. C., 306, 81 S. E., 333; *S. v. Payne, supra.*

"The manner of the killing by defendant, his acts and conduct attending its commission, and his declaration immediately connected therewith,

were evidence of express malice." *S. v. Robertson,* 166 N. C., 356, 81 S. E., 689; *S. v. Cox,* 153 N. C., 638, 69 S. E., 419.

"In determining the question of premeditation and deliberation it is proper for the jury to take into consideration the conduct of the prisoner, before and after, as well as at the time of, the homicide, and all attending circumstances." *Stacy, C. J.,* in *S. v. Evans,* 198 N. C., 82, 150 S. E., 678.

Applying these well settled principles, the evidence in the case at bar is sufficient to be submitted to the jury on the first degree murder charge. The threat at the schoolhouse, though general, was given individuation when the defendant, within two and a half hours after making it, did the very thing he threatened to do—killed a girl. And it is pertinent both on malice and on premeditation and deliberation. His declaration and conduct immediately after committing the act manifests a coolness worthy of consideration by the jury. The statement to the officers, "I killed her because I loved her, and I told her if I ever caught her I was going to kill her" is expressive of specific threat. Then, too, the atrocious manner in which he cut her throat is evidence of express malice and a fixed purpose to make the deed complete.

(2) Did the court below commit error in failing to charge the jury on the presumption of innocence of defendant. This question has been decided adversely to defendant in the cases of *S. v. Boswell,* 194 N. C., 260, 139 S. E., 374; *S. v. Rose,* 200 N. C., 342, 156 S. E., 916; and *S. v. Herring,* 201 N. C., 543, 160 S. E., 891. In the charge to the jury, the court below defined murder in the second degree, and murder in the first degree in accordance with the well settled law of this State. The court clearly placed the burden of proof upon the State to satisfy the jury from the evidence beyond a reasonable doubt that the defendant prior to the time of the killing formed a purpose to kill the deceased, and that such design to kill was formed with deliberation and premeditation, and that in pursuance of such design the defendant killed the deceased. The court fully defined reasonable doubt. No exception is taken to any part of the charge on the law so declared by the court.

(3) There is exception to this portion of the charge: "And I charge you that in order for this plea of insanity to be a complete defense in this case, you must find that the prisoner at the time he killed deceased was incapable of having a criminal intent." This is part of a sentence in which the court correctly charged on the burden of proof upon this plea. It is contended that the portion to which exception is taken is an expression of opinion forbidden by C. S., 564. This position is not well taken. It is settled law in this State that when, in a homicide case, the defendant interposes a plea of insanity, he says by this plea that he did the killing, but the act is one for which he is not responsible. *S. v.*

*Terry,* 173 N. C., 761, 92 S. E., 154. This is an affirmative defense. *S. v. Alston, ante,* 93.

(4) Exception is taken to what is contended by defendant to be a misstatement of the evidence by the court in stating a contention of the State. If incorrectly stated, the matter was not called to the attention of the court at the time, and cannot be held for prejudicial error. *S. v. Burton,* 172 N. C., 939, 90 S. E., 561; *Sorrells v. Decker,* 212 N. C., 251, 193 S. E., 14.

After most careful consideration, we are of opinion that the case has been fairly tried, and we find

No error.