Criminal prosecution, tried upon indictment charging several defendants with an assault with deadly weapons upon one Henry Eatman, with intent to kill, resulting in serious bodily harm.
At the close of the State's evidence, motion to dismiss as of nonsuit was allowed as to all the defendants except Phelon Perry and Modis Perry.
The evidence for the State tends to show that the prosecuting witness owns and operates a store and filling station near Bailey, in Nash County, North Carolina. On 19 May, 1945, the defendant Phelon Perry, accompanied by Bryce Eatman, went to this store and stayed about ten minutes. Later, the same evening, about 10:30 o'clock, Bryce Eatman and Phelon Perry returned to the store. Phelon Perry had been drinking and the prosecuting witness requested Bryce Eatman to take Phelon Perry away. Eatman did not do so; and Phelon Perry asked a Mrs. Taylor, an employee of the prosecuting witness, to dance with him. Mrs. Taylor replied that she could not dance, Phelon Perry jerked her out of her chair and started slinging her around the dance floor. Perry was using vulgar language. Also present at this time were the wife of the prosecuting witness, Mr. and Mrs. Vance Person and Venton Wells. The prosecuting witness asked Phelon Perry to leave the store. He did not do so and the prosecuting witness slapped Perry and with the assistance of Bryce Eatman took Perry out of the store and put him in his car. About forty minutes later Phelon Perry returned to the store accompanied by two carloads of people. He came to the door of the store with a pocketknife in his hand and started to enter. The wife of the prosecuting witness attempted to prevent him from entering. The prosecuting witness went to the door to prevent him from entering, and Phelon Perry stabbed him near the heart with the pocketknife. The wound was not a slicing cut, but a direct stab. The prosecuting witness pushed *Page 532 
Phelon Perry out of the door and threw a bottle at him. Phelon Perry left the store and returned a short time later with Bryce Eatman, Arthur Perry, Homer Perry, Modis Perry and B. Perry. When they arrived at the store, the prosecuting witness was dressing the knife wound which Phelon Perry had inflicted. He was being assisted by his wife. Modis Perry went to the door and said he was looking for "the bad man." He then threw a brick into the store at the prosecuting witness, but did not hit him. Guns were fired about this time, and the prosecuting witness returned the fire, and both the prosecuting witness and Phelon Perry received gunshot wounds.
The evidence for the defendants consisted of the testimony of the defendants themselves.
Phelon Perry testified that the prosecuting witness cut him, jumped on his and beat him up and that he did not remember anything that happened after that. He had been drinking beer, probably five or six bottles. He did not know when he was shot in the face. He did not remember going back into the store after he was hit by a bottle. "My memory first began to come back to me when I was in the hospital in Wilson."
Modis Perry testified that he went to the store of the prosecuting witness after he heard his brother Phelon Perry and Henry Eatman had just had some trouble. That he sat in his car in front of the store for a few minutes. When he got out of the car Phelon was on the ground and Henry Eatman was beating him. Phelon's face was bloody, his shirt was bloody and he had a cut under his eye. "I told him to quit and leave him alone, and they didn't, so I told him they couldn't kill my brother, so right then I picked up a rock that was lying there; a rock or brick I picked up and throwed it at them and when I threw it, it went inside the store. . . . Henry Eatman was scuffling with my brother and I was trying to get him off of my brother. I must have missed him when I threw the brick. The brick was lying on the oil drum in front of the station. At the time I threw the brick I was about as far from Mr. Eatman as from the witness stand to Mr. Sharpe. The reason I didn't walk over and hit Mr. Eatman in the head with the brick was because I didn't want to kill anybody and didn't want to hit anybody. Just before I threw the brick I didn't hardly have time to think. I didn't want to hit him so I throwed it at him and missed him."
The jury returned a verdict of guilty of an assault with a deadly weapon as to each defendant; and from the judgment pronounced thereon, the defendants appealed to the Supreme Court, assigning error.
The defendants assign as error the refusal of his Honor to grant their motion for judgment as of nonsuit at the conclusion of the State's evidence and for failure to grant a similar motion lodged by the defendants at the close of all the evidence.
These assignments of error cannot be sustained. The defendants did not except to the refusal of the court to grant their motion for judgment as of nonsuit at the close of the State's evidence. Moreover, they testified in their own behalf and did not renew their motion to dismiss at the close of all the evidence.
A motion for judgment as of nonsuit, under G.S., 15-173, must be made at the close of the State's evidence, exception noted, if overruled, and, if the defendant introduces evidence the motion to dismiss should be renewed at the close of all the evidence, exception again noted, if overruled; and upon appeal from the refusal to dismiss, the assignment of error should be based upon the latter exception. S. v. Bittings,206 N.C. 798, 175 S.E. 299; S. v. Ormond, 211 N.C. 437, 191 S.E. 22. No such assignment of error appears on the record. Even so, we think the evidence ample to go to the jury as to both defendants.
A number of exceptions relate to the action of the court in permitting a witness for the State to testify that he examined the premises of the prosecuting witness next morning after the defendant Phelon Perry and the prosecuting witness were shot and that he found empty shotgun shells on the premises near the store building and gunshot in the building.
The defendants complain of this evidence as being highly prejudicial, since the State did not establish the identity of the persons who fired the shots or the person who shot the prosecuting witness. However, the court withdrew from the jury the question of a criminal offense being committed by the defendants by the use of guns, and instructed the jury as follows: "There is no sufficient evidence in the case against this defendant to show that he fired any shots which found their place in the body of Eatman. The evidence does not disclose who fired the shots which Eatman testified lodged in his body and, therefore, the jury could not find the defendant, Phelon Perry, guilty of an assault with a deadly weapon because of the gunshot wound received by the prosecutor, but the verdict, if arrived at by the jury, of guilty, would have to be based upon what took place at the time of the alleged cutting, that is to say, the act of cutting, which would have to form the basis of a verdict of guilty in the case and the gunshot wound could not form the basis for the guilt of either of the defendants in this case." Conceding that the evidence was erroneously admitted, the instruction given by his Honor relative thereto, made its admission harmless. It is not sufficient for a defendant to show mere error in the trial below. He must show that his rights were prejudiced by the error. S. v. King, 225 N.C. 236, 34 S.E.2d 3; S. v. Beal, 199 N.C. 278,154 S.E. 604. *Page 534 
Assignment of Error No. 8 is based upon the failure of the trial judge to instruct the jury that certain testimony of one of the State's witnesses was in corroboration of the testimony of the prosecuting witness. The defendants cite S. v. Chapman, 221 N.C. 157, 19 S.E.2d 250, as authority for their contention. This assignment of error is not based upon an exception entered at the trial below and cannot be sustained. Moreover, the evidence complained of was withdrawn from the consideration of the jury. But we discuss it because of the apparent misconception of the holding in the above case. There the exception was to the refusal of the court, upon objection by the State, to permit one of the witnesses for the defendant to testify to statements made by the defendant on the morning following the alleged crime, unless it was understood that the defendant was to testify in his own behalf. The defendant agreed to testify, but even so in view of the State's objection, it being admitted out of order and admissible only as corroborative evidence, it was the duty of the court to so instruct the jury at the time of its admission. But this is not the general rule. The general rule is set forth in Rule 21 of the Rules of Practice in the Supreme Court, as follows: "Nor will it be ground of exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks at the time of admission, that its purpose shall be restricted." S. v. Walker, ante, 458,38 S.E.2d 531; S. v. Ham, 224 N.C. 128, 29 S.E.2d 449; S. v. McKinnon,223 N.C. 160, 25 S.E.2d 606; S. v. Johnson, 218 N.C. 604,12 S.E.2d 278; Beck v. Tanning Co., 179 N.C. 123, 101 S.E. 498; Tise v.Thomasville, 151 N.C. 281, 65 S.E. 1007; Hill v. Bean, 150 N.C. 436,64 S.E. 212. In the trial below there was neither objection to the admission of the testimony nor request for it to be limited as corroborative only.
The defendants except and assign as error the following portion of his Honor's charge: "The defendants have pleaded not guilty and are presumed to be innocent."
The defendants contend the court should have gone further and stated that the presumption of innocence surrounded the defendants and remained with them throughout the trial until their guilt was established beyond a reasonable doubt by a verdict of the jury.
It has been held by this Court that it is not error for the trial judge to fail to charge the jury on the presumption of innocence. S. v. Bowser,214 N.C. 249, 199 S.E. 31; S. v. Alston, 210 N.C. 258,186 S.E. 354; S. v. Herring, 201 N.C. 543, 160 S.E. 891; S. v. Rose,200 N.C. 342, 156 S.E. 916; S. v. Boswell, 194 N.C. 260, 139 S.E. 874.
The presumption of innocence is a subordinate feature of the cause and if the defendants desired an amplification of the charge in this respect, they should have so requested at the time. S. v. Merrick, 171 N.C. 788,88 S.E. 501; S. v. Herring, supra; S. v. Boswell, supra. *Page 535 
The court properly charged the jury as to the burden of proof and fully defined reasonable doubt. The exception cannot be sustained.
Exceptions 21 and 28 are directed to the action of the trial court in charging the jury that it could return one of two verdicts against the defendant, Modis Perry — guilty of an assault with a deadly weapon or not guilty. The defendant contends his Honor should have charged the jury that it could bring in one of three verdicts, to wit: Guilty of assault with a deadly weapon, guilty of simple assault, or not guilty.
There is no evidence of any assault on the prosecuting witness by Modis Perry except the assault with a brick. If the brick thrown by Modis Perry constituted a deadly weapon, because of the manner in which it was used, the defendant has no cause to complain because the trial judge refused to charge the jury that it could convict this defendant of a simple assault.
The word "brick" has a well known meaning. It is defined in 11 C.J.S., p. 878, as "An artificial substitute for stone, which has been extensively used in all ages. Among builders and mechanics, a brick is understood to be eight inches in length, four inches in width, and two inches in thickness."
In S. v. Lee, 6 W. W. Harr., 11 (Del.), 171 A. 195, the Court said: "A deadly weapon is such a weapon as is likely to produce death when used by one person against another; and a brick thrown with force and violence in close proximity to the person of another, or used as a weapon to strike by holding it in hand, is a deadly weapon." And in S. v. Schumann (Iowa),175 N.W. 75, it is said: "It has been held that a brick is, or may be, a deadly weapon, when used in an assault. State v. Simms, 80 Miss. 381,31 So. 907."
In S. v. Watkins, 200 N.C. 692, 158 S.E. 393, Stacy, C.J., speaking for the Court, said: "An instrument which is likely to produce death or great bodily harm, under the circumstances of its use, is properly denominated a deadly weapon. S. v. Craton, 28 N.C. 165, at page 179. But where it may or may not be likely to produce such results, according to the manner of its use, or the part of the body at which the blow is aimed, its alleged deadly character is one of fact to be determined by the jury. S. v.West, 51 N.C. 505: `Where the deadly character of the weapon is to be determined by the relative size and condition of the parties and the manner in which it is used,' the question is for the jury. S. v. Archbell,139 N.C. 537, 51 S.E. 801; S. v. Norwood, 115 N.C. 789, 20 S.E. 712;S. v. Huntley, 91 N.C. 621. `If its character as being deadly or not depended upon the facts and circumstances it became a question for the jury with proper instructions from the court.' S. v. Beal, 170 N.C. 764,87 S.E. 416. See, also, S. v. Hefner, 199 N.C. 778; S. v. Phillips,104 N.C. 786, 10 S.E. 463; S. v. Porter, 101 N.C. 713, 7 S.E. 902;S. v. Collins, 30 N.C. 407." *Page 536 
In the instant case, under the evidence, we think his Honor would have been justified in holding as a matter of law that the manner in which the defendant used the brick, it was a deadly weapon. However, the question was submitted to the jury, under the following instructions: "As to Modis Perry, . . . if you should find beyond a reasonable doubt that he threw a brick in the store of Eatman with the intent to do him bodily harm, and further find that the brick was a deadly weapon under the circumstances of its use, that is, an instrument which was capable of producing death or great bodily harm under the circumstances of its use, then the defendant, Modis Perry, would be guilty of an assault with a deadly weapon, unless you find him not guilty on the principle of self-defense."
Under our decisions, the exception cannot be sustained. S. v. Hobbs,216 N.C. 14, 3 S.E.2d 431; S. v. Beal, 170 N.C. 764, 87 S.E. 416; S.v. Archbell, 139 N.C. 537, 51 S.E. 801.
The defendant, Phelon Perry, also excepts and assigns as error the refusal of the court to charge the jury that it might convict him of a simple assault. There is no evidence tending to show that Phelon Perry assaulted the prosecuting witness except when the prosecuting witness and his wife undertook to keep Perry out of their store. It was during that altercation that the defendant Phelon Perry is charged with stabbing the prosecuting witness with a pocketknife and inflicting upon him serious bodily harm. S. v. Hobbs, supra, is in point and sustains the ruling of the court below. Schenck, J., speaking for the Court, said: "The defendant assigns as error the court's failure to submit to the jury the charge of a simple assault. This assignment is untenable for the reason that there is no evidence of simple assault. The State's evidence tended to show that the assault committed upon the prosecuting witness was committed with a missile large enough, and thrown with force enough, to knock a hole 6 or 7 inches in the windshield of the truck driven by the witness. . . . `Where all the evidence at the trial of a criminal action, if believed by the jury, tends to show that the crime charged in the indictment was committed as alleged therein, and there is no evidence tending to show the commission of a crime of less degree, it is not error for the court to fail to instruct the jury that they may acquit the defendant of the crime charged in the indictment and convict him of a crime of less degree. See S. v. Ratcliff, 199 N.C. 9,153 S.E. 605, where the statute, C.S., 4640, is construed and applied.' S. v. Cox, 201 N.C. 357."
We have carefully examined the remaining exceptions and assignments of error, especially those challenging the correctness of his Honor's charge on the question of self-defense as to both defendants, and they cannot be sustained.
In the trial below, we find
No error. *Page 537