STATE v. NOAH DOCKERY.

(Filed 23 September, 1953.)

**1. Homicide §§ 20, 21—**

In a homicide prosecution, testimony of a declaration made by defendant amounting to a general threat or showing a general malevolent spirit is incompetent on the question of malice, premeditation and deliberation, but if the other evidence gives defendant's statement individuation so that the jury may infer that such threat or statement referred to the deceased or to a class to which deceased belonged, the testimony is competent.

**2. Same— ·**

Testimony that defendant declared ". . . they are trying to make outlaws out of us and there will be plenty of trouble over this" *is held* competent in this prosecution of defendant for the fatal shooting of the sheriff of the county, in view of the fact that the other evidence adduced discloses that the statement was made in connection with defendant's attempt to

have his son released on bail and was directed to the law enforcement officers of the county.

**3. Criminal Law § 50f—**

While counsel are entitled to wide latitude in making their arguments to the jury, counsel may not go outside the record and inject into their arguments facts not included in the evidence.

**4. Homicide § 28—**

In a homicide prosecution, the jury has the right, in its unbridled discretion, in all cases in which a verdict of guilty of murder in the first degree is reached, to recommend that the punishment shall be imprisonment for life. G.S. 14-17.

**5. Criminal Law § 50f—**

In a homicide prosecution, neither counsel for the private prosecution nor the solicitor is entitled to argue, in appealing to the jury not to recommend life imprisonment, that life sentences are always commuted in North Carolina, since such argument is not only outside the record, but also contrary to the spirit and purpose of G.S. 14-17.

**6. Criminal Law § 78c—**

Ordinarily, a new trial will not be awarded on appeal for improper argument of the solicitor or private prosecution unless an exception thereto has been timely entered and duly preserved, but when a sentence of death is mandatory upon the verdict, and statement disclosing an improper and prejudicial argument to the jury by the private prosecution appears of record by order of the trial court, a new trial will be awarded.

APPEAL by defendant from *Gwyn, J.,* March Term, 1953, of CHEROKEE.

Criminal prosecution tried upon an indictment charging the defendant with the premeditated murder of one Frank Crawford.

The evidence of the State discloses that about 4:00 p.m., on 3 March, 1953, Frank Crawford, Sheriff of Cherokee County, went to the home of the defendant, which is located about five miles northwest of Murphy, for the purpose of serving a warrant on the defendant. The warrant charged him with the crime of arson.

According to the evidence, the defendant recognized the deceased as Sheriff while he was standing outside of the defendant's house. He called him by his first name and inquired what he wanted. The Sheriff replied that he had papers for him. The Sheriff entered the house after the wife of the defendant opened the door, and went into the back room where the defendant had been lying down. Before the Sheriff opened the door to the bedroom, the defendant got his shotgun and loaded it, and as the Sheriff was apparently attempting to take something from his pocket, the defendant raised the shotgun and fired. The charge from the gun entered the chest of the deceased and resulted in his death within a few minutes.

Verdict: "Guilty of murder in the first degree."

Judgment: Death by asphyxiation.

Defendant appeals and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*O. L. Anderson and G. L. Houk for appellant.*

DENNY, J. The defendant excepts to and assigns as error the admission of a statement made by him in connection with a preliminary hearing of his son, Allen Dockery, before a Justice of the Peace on 1 March, 1953. His son having been bound over to the Superior Court, the defendant, Noah Dockery, made inquiry as to the amount of bond required for the release of his son pending his trial in the Superior Court. He was advised that the bond was $500.00. He then inquired if he could make it. He was informed that he could do so if he was worth $500.00 over and above exemptions. He said: "I can't make it," and mentioned some other Dockery. He was likewise informed that the same financial requirement applied to him. He then said: "I won't make it and he can lay there and rot . . . they are trying to make outlaws out of us and there will be plenty of trouble over this."

The statement was admitted for the purpose of showing malice, premeditation, and deliberation. This declaration, standing alone, at most, would constitute no more than a general threat or statement showing a malevolent spirit. But, such statement, in our opinion, when considered with other facts adduced in the trial below, was admissible as a threat. It is ordinarily the rule that a general threat to kill or injure someone, or a statement showing a general malevolent spirit, not shown to have any reference to the deceased, is not admissible on the question of malice, premeditation, or deliberation. However, such threat or statement becomes admissible when other evidence adduced in the trial gives individuality to it so that the jury may infer that such threat or statement referred to the deceased or to a class to which he belonged. 40 C.J.S., Homicide, section 206 (c), page 1110, *et seq.*

"A threat to kill or injure someone, not definitely designated, is admissible in evidence, where other facts adduced give individuation to it; but general threats not shown to have any reference to the deceased cannot be proved." 21 Cyc. 922; *S. v. Ellis,* 101 N.C. 765, 7 S.E. 704; *S. v. Hunt,* 128 N.C. 584, 38 S.E. 473; *S. v. Shouse,* 166 N.C. 306, 81 S.E. 333; *S. v. Burton,* 172 N.C. 939, 90 S.E. 561; *S. v. Casey,* 201 N.C. 185, 159 S.E. 337; *S. v. Payne,* 213 N.C. 719, 197 S.E. 573; *S. v. Bowser,* 214 N.C. 249, 199 S.E. 31; *S. v. Hudson,* 218 N.C. 219, 10 S.E. 2d 730.

The record before us discloses that shortly after his arrest, the defendant made the following statement to one of the arresting officers: "That

he had been sore after his boy had been put in jail on Saturday and he said that the next one come (sic) after him was going to read a warrant to him or he wasn't going." It is further disclosed by the defendant's confession, which was offered in evidence by the State, that the defendant saw the Sheriff through a window before he entered his home on 3 March, 1953, and asked him what he wanted. The Sheriff replied that he had papers for him. The defendant said: "Read them to me." However, before the Sheriff reached the room where the defendant was, the defendant had gotten his gun, loaded it, and was standing holding the gun pointed toward the floor. The Sheriff opened the door and was apparently trying to get something out of his pocket with one hand and with the other hand still on the door knob, when the defendant aimed his gun and shot him. It is also stated in the confession that the Sheriff never threatened him; that he was always nice to him, but when he shot him he knew he was going to kill him or the Sheriff would kill him.

In S. v. Burton, supra, the defendant kept a small store in which he took his meals and slept. For several nights he had been annoyed by persons knocking at the door of his store and then running off. On the night of the homicide, about 10 o'clock, the deceased, a boy of 16 years of age, went with several other boys to the store and threw a piece of wood against the door and then ran off. The defendant shot at them, and killed the deceased. On the evening of the homicide the defendant was heard to say: "I expect to kill the first G—d d—n man that taps on my door tonight." The defendant was tried and convicted of murder in the second degree. He appealed and assigned as error the admission in evidence of the above statement. The court held it was admissible on the ground that it tended to show premeditation and deliberation and that the evidence offered by the State might have justified the jury in finding the defendant guilty of murder in the first degree.

Likewise, in S. v. Hunt, supra, the declaration of the defendant that he intended to get some whiskey and go down to the party that night and "raise some hell," was held competent to show malice in a trial for second degree murder for a killing committed at the party. The Court said: "It was not necessary to show special malice as to the deceased, since he was one of the persons at the party and embraced within the declaration of the defendant."

In the case of S. v. Ellis, supra, William and Amma Ellis, who were brothers, were sharpening their knives. William said, "somebody will be surprised tonight," and Amma said, "somebody will be surprised tonight." That night, when the deceased returned to his home, Amma stabbed him. The above statement was held admissible as a threat.

"Threats made by a person against one of a class are admissible on a prosecution for committing a crime against another of the same class."

20 Am. Jur., Evidence, section 347, page 322; *S. v. Baity,* 180 N.C. 722, 105 S.E. 200; *S. v. Miller,* 197 N.C. 445, 149 S.E. 590; *S.: v. Casey, supra; S. v. Payne, supra.*

This assignment of error will not be upheld.

Another very serious question, however, is presented on this record. Counsel for private prosecution in making his argument to the jury, said: "There is no such thing as life imprisonment in North Carolina today."

This argument was made as a part of counsel's plea for a verdict of guilty of murder in the first degree without recommendation that punishment be life imprisonment. The reason advanced by counsel in support of this argument was that in cases where sentences are for life imprisonment, petitions are filed for commutation; that the commutations are allowed and persons thus sentenced to life imprisonment are finally paroled and allowed to go free.

Only one of the counsel for defendant was present in the courtroom at the time this argument was made and no objection was interposed to it at the time or later. However, the able trial judge, fearing that the prisoner's defense may have been prejudiced by the argument and his failure *ex mero motu* to instruct the jury not to consider it, directed that the facts with respect thereto be incorporated in the record and in the prisoner's statement of case on appeal to this Court.

It is generally recognized that wide latitude should be given to counsel in making their arguments to the jury. *S. v. Bowen,* 230 N.C. 710, 55 S.E. 2d 466; *S. v. Little,* 228 N.C. 417, 45 S.E. 2d 542. Even so, counsel may not go outside the record and inject into their arguments facts not included in the evidence. When this is done, it is the duty of the presiding judge, upon objection, to correct the transgression at the time of its occurrence or wait and do so when he comes to charge the jury. *S. v. Little, supra,* and cited cases. Moreover, where objection is made to the argument of counsel and the court refuses to instruct the jury to disregard it, such argument, if deemed prejudicial, will be held for error if an exception is duly and timely entered thereto. *S. v. Tucker,* 190 N.C. 708, 130 S.E. 720. McIntosh, North Carolina Practice and Procedure, page 621. In such instances, however, if the argument is improper and not warranted by the evidence, and is calculated to mislead or prejudice the jury, it is the duty of the court to interfere *ex mero motu* and stop the argument and instruct the jury to disregard it. *McLamb v. R. R.,* 122 N.C. 862, 29 S.E. 894; *S. v. Noland,* 85 N.C. 576. Furthermore, an exception to improper argument of a solicitor or other counsel for the State may be entered after verdict, where the verdict rendered requires the court to enter a death sentence and the harmful effect of the argument is such that it may not be removed from the minds of the jurors.

*S. v. Hawley,* 229 N.C. 167, 48 S.E. 2d 35; *S. v. Little, supra; S. v. Noland, supra.*

G.S. 14-17, as amended by the 1949 Session Laws of North Carolina, Chapter 299, section 1, pertaining to punishment for murder in the first degree, reads as follows: "A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate, any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court the jury shall so recommend, the punishment shall be imprisonment for life in the state's prison, and the court shall so instruct the jury." The proviso was added by the 1949 amendment.

In construing the proviso in the above statute, *Winborne, J.,* in speaking for the Court in *S. v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212, said: "It is patent that the sole purpose of the act is to give to the jury in all cases where a verdict of guilty of murder in the first degree shall have been reached, the right to recommend that the punishment for the crime shall be imprisonment for life in the State's prison. . . . No conditions are attached to, and no qualifications or limitations are imposed upon, the right of the jury to so recommend. It is an unbridled discretionary right. And it is incumbent upon the court to so instruct the jury. In this, the defendant has a substantive right. Therefore, any instruction, charge or suggestion as to the causes for which the jury could or ought to recommend is error sufficient to set aside a verdict where no recommendation is made." This decision was cited with approval and followed in *S. v. Simmons,* 234 N.C. 290, 66 S.E. 2d 897.

The sort of argument made by counsel for private prosecution in the trial below was held to be prejudicial and by reason of which new trials were granted in *S. v. Little, supra,* and *S. v. Hawley, supra.* Moreover, the argument was directly in conflict with the spirit and purpose of the 1949 proviso contained in G.S. 14-17. It was an appeal calculated and intended to induce the members of the jury not to exercise the "unbridled discretionary right" given to them by law. Furthermore, in support of this appeal, counsel "traveled outside of the record" and argued facts which were not in the evidence. Even so, it was the duty of defendant's counsel to have requested the court to stop the argument and instruct the jury to disregard it as soon as the nature and purport of it became evident. If this had been done, the court, doubtless, could have cured any prejudicial effect the argument might have had up to that time on the minds of the jurors. But, since counsel for the defendant permitted the argument to proceed without objection, it is doubtful the court could

have given an instruction that would have removed the harmful effect the argument might have had on their minds if it had undertaken to do so. *S. v. Hawley, supra; S. v. Little, supra; S. v. Noland, supra.*

It is the rule of this Court to review all death cases in which an appeal is taken whether the appeal is perfected or not. In such cases, it is the custom of the Attorney-General, where the appeal is not perfected, to docket the record proper and move to dismiss the appeal under Rule 17, Rules of Practice in this Court, 221 N.C. 551. Where the Court finds no error on the record proper, the judgment of the court below will be affirmed and the appeal dismissed. *S. v. Watson,* 208 N.C. 70, 179 S.E. 455; *S. v. Lewis,* 230 N.C. 539, 53 S.E. 2d 528; *S. v. Medlin,* 231 N.C. 162, 56 S.E. 2d 396.

As we have heretofore pointed out, we have no assignment of error based on an exception to the argument we have discussed. However, the trial judge ordered that his statement with respect thereto be made a part of the record. Hence, we have taken cognizance of the improper argument of counsel since the verdict rendered made it mandatory for the court to enter a sentence of death. *S. v. Watson, supra.* Except in death cases, however, a new trial will not be granted because of improper argument of counsel, unless an exception thereto has been timely entered and duly preserved.

In light of our decisions applicable to the facts presented on this record, in our opinion the defendant is entitled to a new trial and it is so ordered.

New trial.