## STATE v. COVEY CONNOR LAMM.

(Filed 27 September, 1950)

**1. Homicide § 3—**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17.

**2. Homicide § 16—**

The intentional killing of a human being with a deadly weapon implies malice and, if nothing else appears, constitutes murder in the second degree, and the State has the burden of proving beyond a reasonable doubt premeditation and deliberation in order to constitute the offense murder in the first degree.

**3. Homicide § 4c—**

Premeditation means thought beforehand for some length of time, however short.

**4. Same—**

Deliberation does not require brooding or reflection for any appreciable length of time, but imports the execution of an intent to kill in a cool state of blood without legal provocation in furtherance of a fixed design.

**5. Homicide § 21—**

All attending circumstances and the conduct of defendant before and after, as well as at the time of the homicide, are competent to be considered by the jury upon the question of premeditation and deliberation.

**6. Homicide § 25—**

Evidence tending to show that defendant intentionally killed deceased with a deadly weapon in a cool state of blood without legal provocation,

*is held* sufficient to be submitted to the jury on the question of defendant's guilt of murder in the first degree.

**7. Criminal Law § 5a—**

The test of mental responsibility for crime is the capacity to distinguish between right and wrong at the time and in respect to the matter under investigation.

**8. Criminal Law § 53g—**

Even when conviction of less degree of the crime is permissible under the bill of indictment, the court is required to submit the question of defendant's guilt of such less degree only if there is evidence to support the milder verdict.  G.S. 15-170.

**9. Homicide § 27h—**

Where the evidence tends to show that defendant intentionally killed deceased with a deadly weapon without just cause or legal provocation, and there is no evidence in mitigation, the court is not required to submit to the jury the question of defendant's guilt of manslaughter.

APPEAL by defendant from *Burgwyn, Special Judge,* at May Term, 1950, of WILSON.

Criminal prosecution upon a bill of indictment charging that defendant Covey Connor Lamm, with force and arms, at and in Wilson County, feloniously, willfully and of his malice aforethought, did kill and murder one Mettie Lamm against the form of the statute, etc.

Upon arraignment in Superior Court, defendant pleaded not guilty, and, for his defense, relies upon a plea of insanity.

And upon the trial in Superior Court the State offered evidence tending to show these facts: Mettie Lamm, a small woman, weighing about 100 to 105 pounds, 43 years of age, wife of defendant for 25 or 26 years, and suffering with palsy, and in feeble condition, hardly able to walk, came to her death about 7:30 o'clock on the evening of 27 February, 1950, in the kitchen of the house in which she and defendant were residing in Wilson, North Carolina, as the result of wounds inflicted by bullets shot from a pistol in the hands of defendant.  There were three wounds of entrance, and three of exit in her chest,—any one of which in the opinion of medical expert would have caused her death.  When officers called to the scene arrived, defendant was sitting by an oil heater with his head in his hands and his elbows on his knees.  He changed position when officer Mercer knocked on the door.  And on being asked by officer Johnston, "What seemed to be the trouble?", defendant replied, "If you will come back here in this room I will tell you all about it."  Officer Johnston found the body of Mrs. Lamm, lying on the floor in the kitchen, dressed in "regular clothes," with a pillow under the head.  The gun, a revolver, was found by the officers, and defendant identified it as the gun he used. The gun smelled of burned powder.

STATE *v.* LAMM.

The defendant made these statements : (1) To officer Johnston, he first said : "It sure is a mess . . . I had my reasons but I can't tell you." And a day or two afterwards this officer asked defendant if he wanted to talk then, in reply to which he said : "Johnston, I had my reasons but I can't tell it." (2) Replying to question by Chief of Police Privette as to why did he kill his wife, defendant said : "I had my reasons but nobody will never know." And (3) To officer Mercer defendant said : "Mr. Mercer, I had a reason for doing it."

The State also offered this testimony of a brother of deceased : "I went with Lamm's son, Ronald, to see him the next day and his son asked him why he did it and he said he did not know. He said he had the gun and she said, 'Well, you've got it, have you?', and that she didn't say anything more, just smiled, and that he shot her then and went and put the pistol back. He said he put the pillow under her head; that he didn't know why he did it . . . Ronald asked him . . . if he knew what he had done, and he said 'Yes,' and he (Ronald) said 'What?', and he (Covey Lamm) said he had killed . . . Mettie. He . . . said he went to the chest of drawers and took the gun and come to the door, and . . . she said 'Well, you have got it, have you?', and . . . he shot her then. And after he shot, he took the empty cartridges out of the pistol and took them out in the back of the house and went back and put the pistol back in the drawer." Officer Johnston testified that defendant had been drinking, "but not in condition to warrant arrest for public drunkenness," and that defendant "was not crying, but at ease."

And defendant, as a witness in behalf of himself, testified in pertinent part : "I remember shooting my wife. I got home around 7; she was not at home; I put something on the table and swept the house; she come in and said she had been next door. She asked me how I was feeling, went to the dresser and was combing her hair and I do not remember anything else that was said. She was in the kitchen and I got my gun and walked to the door and went to shooting her. I was not mad at her. There were no ill words. I then got a pillow and put under her head and got down and kissed her. She said no more. I went next over next door and told Drivus Lamm and his wife what I had done. Annie asked 'What did you do it for?', and I said, 'I don't know.' I went back in the house and sat down and Mr. Mercer and Mr. Johnston came . . ." Defendant further testified that he had not planned or thought about killing his wife; that he did not know why he did it; that he had lapses of memory for three or four years; that he was a drinking man; that the day in question he drank a part of a pint of wine, about 11 or 12 o'clock, and took a drink about 45 minutes before he went home, but that he was not drunk.

Defendant offered the testimony of Mrs. Annie Lamm and her husband, Rives Lamm, in corroboration of his testimony that he went to their

house and told them what he had done, and as to his statement to them that he did not know why he did it.

Mrs. Lamm testified that defendant "was not upset or unnerved" . . . and that "he was normal but seemed to be kindly worried."

Rives Lamm testified, "He appeared normal except I took him to be drinking,—talked with reason . . . he appeared to be rational."

And defendant gave testimony, and offered testimony of other witnesses bearing upon his plea of insanity. Some gave it as their opinion that defendant "knew right from wrong." But one of them testified that in his opinion and belief defendant did not know "the difference in right and wrong."

Verdict: Guilty of murder in the first degree.

Judgment: Death by the inhalation of lethal gas in the way and manner prescribed by law.

Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*R. F. Mintz for defendant, appellant.*

WINBORNE, J. The Attorney-General for the State moves in this Court to dismiss the appeal for the reason that defendant's brief does not comply with Rule 28 of the Rules of Practice in the Supreme Court,— 221 N.C. 544. As to this, we are of opinion that the brief is adequate to present the points principally relied upon by defendant as error in the trial court. Hence the motion is not allowed. And, as the life of defendant is at stake in this case, we have given due consideration to each assignment of error shown in the record, and error is not made to appear.

Defendant earnestly contends that there is error in the refusal of the court to allow his motion for judgment as of nonsuit on the first degree murder charge in compliance with the statute—G.S. 15-173. The motion challenges the sufficiency of the evidence to show premeditation and deliberation beyond a reasonable doubt. *S. v. Bittings,* 206 N.C. 798, 175 S.E. 299, and cases cited. See also *S. v. Bowser,* 214 N.C. 249, 199 S.E. 31; *S. v. Hawkins,* 214 N.C. 326, 199 S.E. 284.

It is appropriate, therefore, to recur to the principles of law applicable to the case. Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17 *S. v. Hawkins, supra; S. v. Chavis,* 231 N.C. 307, 56 S.E. 2d 678.

The intentional killing of a human being with a deadly weapon implies malice and, if nothing else appears, constitutes murder in the second degree. *S. v. Payne,* 213 N.C. 719, 197 S.E. 573; *S. v. Chavis, supra.*

"The additional elements of premeditation and deliberation necessary to constitute murder in the first degree, are not presumed from a killing with a deadly weapon. They must be established beyond a reasonable doubt, and found by the jury, before a verdict of murder in the first degree can be rendered against the prisoner." *S. v. Miller,* 197 N.C. 445, 149 S.E. 590; *S. v. Payne, supra; S. v. Hawkins, supra; S. v. Chavis, supra.*

" 'Premeditation means thought of beforehand' for some length of time, however short." *S. v. Dowden,* 118 N.C. 1145, 24 S.E. 722; *S. v. Benson,* 183 N.C. 795, 111 S.E. 869; *S. v. Hawkins, supra; S. v. Chavis, supra.*

In the *Dowden case, supra, Avery, J.,* writing for the Court on the subject of premeditation had this to say: "The law does not lay down any rule as to the time which must elapse between the moment when a person premeditates or comes to the determination in his own mind to kill another person and the moment when he does the killing, as a test. It is not a question of time. It is merely a question of whether the accused formed in his own mind the determination to kill the deceased, and then at some subsequent period, either immediate or remote, does carry his previously formed determination into effect by killing the deceased."

And it has been said that "deliberation means that the act is done in a cool state of blood. It does not mean brooding over it or reflecting upon it a week, a day or an hour, or any other appreciable length of time; but it means an intention to kill, executed by defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose, and not under the influence of a violent passion, suddenly aroused by some lawful or just cause or legal provocation." *S. v. Benson, supra; S. v. Steele,* 190 N.C. 506, 130 S.E. 308; *S. v. Hawkins, supra; S. v. Chavis, supra,* and cases cited.

And, "in determining the question of premeditation and deliberation it is proper for the jury to take into consideration the conduct of defendant, before and after, as well as at the time of the homicide, and all attending circumstances," *Stacy, C. J.,* in *S. v. Evans,* 198 N.C. 82, 150 S.E. 678; *S. v. Hawkins, supra,* and cases cited.

Applying these principles to the case in hand, the evidence is abundantly sufficient to be submitted to the jury on the first degree murder charge, and to support the verdict of guilty of murder in the first degree as found by the jury.

Defendant also assigns as error portions of the charge in respect of the law applicable to his plea of insanity. The test of responsibility of a person charged with a criminal offense in this State is the capacity to distinguish between right and wrong at the time and in respect of the matter under investigation. *S. v. Shackleford,* 232 N.C. 299, 59 S.E. 2d

825, and cases there cited. "He who knows the right and still the wrong pursues is amenable to the criminal law," *Stacy, C. J.,* in *S. v. Jenkins,* 208 N.C. 740, 182 S.E. 324, citing *S. v. Potts,* 100 N.C. 457, 6 S.E. 657.

Tested by this principle, the charge of the court fairly presents the issue to the jury. No prejudicial error is made to appear.

Defendant also assigns as error the failure of the court to submit to the jury the question of manslaughter.

In this State it is a well recognized rule of practice that where one is indicted for a crime and under the same bill it is permissible to convict the defendant of "a less degree of the same crime," G.S. 15-170, and there is evidence tending to support a milder verdict, the prisoner is entitled to have the different views presented to the jury, under a proper charge. *S. v. Robinson,* 188 N.C. 784, 125 S.E. 617; *S. v. Staton,* 227 N.C. 409, 42 S.E. 2d 401. But where there is no evidence to support such milder verdict, the court is not required to submit the question of such verdict to the jury. Applying this rule to the case in hand, the evidence does not admit of a verdict of guilty of manslaughter. Hence there is no error in failing to so charge.

Other assignments of error are without merit, and require no express consideration.

Hence, in the judgment from which appeal is taken, we find

No error.