STATE OF NORTH CAROLINA v. ALEXANDER McLAUGHLIN

No. 28

(Filed 14 April 1975)

1. Homicide § 12— indictment — premeditated murder or murder in perpetration of felony

2. Homicide § 12; Indictment and Warrant § 13— murder indictment — purpose of bill of particulars

If a defendant is charged with murder in the first degree by a bill of indictment drawn under G.S. 15-144 and desires to know whether the State relies on proof the killing was done with premeditation or deliberation, or in the perpetration or attempt to perpetrate a felony, he should apply for a bill of particulars as provided in G.S. 15-143; the function of such a bill of particulars is (1) to inform the defense of the specific occurrences intended to be investigated on the trial and (2) to limit the course of the evidence to the particular scope of inquiry.

3. Indictment and Warrant § 13— bill of particulars — denial proper

In a prosecution for arson and first degree murder, the trial court did not abuse its discretion in denying defendant's motion for a bill of particulars where the arson indictment set out the county in which the alleged offense occurred, the date of the occurrence, the street address of the house alleged to have been burned, and the name of the occupants therein, the murder indictments gave the date, the county where the offense was alleged to have occurred, and the names of the alleged victims, defendant was familiar with the house involved and its occupants, all information surrounding the commission of the crimes was well known to defendant, and the solicitor announced that he would make out a case of premeditation and deliberation and would also make out a case of homicide in the perpetration of a felony.

4. Arson § 4; Homicide § 21— premeditated murder — murder in perpetration of arson — sufficiency of evidence of both

Where the evidence tended to show that prior to the fire witnesses heard defendant say he was going to burn the house in question, defendant told the homeowner that he was going to burn her house and her baby, and after the fire was set defendant made the statement that he had "burned [the house] down," such evidence was sufficient to permit the jury to find that defendant committed premeditated murder or murder in the perpetration or attempt to perpetrate arson, and the trial court did not err in submitting both to the jury.

State v. McLaughlin

**5. Criminal Law § 6— intoxication as defense — specific intent as element of crime**

Except where a crime requires a showing of specific intent, voluntary intoxication is not a defense to a criminal charge.

**6. Homicide § 8— defense of intoxication — specific intent as element of crime**

Specific intent is not an element of the crime of arson, but it is a necessary constituent of the elements of premeditation and deliberation in first degree murder, and a showing of legal intoxication to the jury's satisfaction will mitigate the offense to murder in the second degree.

**7. Homicide § 8— first degree murder — intoxication as defense — insufficiency of evidence**

Testimony by witnesses that defendant had been drinking but that he was not drunk did not constitute evidence that defendant's mind was so intoxicated and his reason so overthrown that he could not form a specific intent to kill, nor did defendant at any time say he was so drunk that he did not know what he was doing but instead recited in detail his actions on this occasion; therefore, the trial court was not required to instruct the jury as to defendant's intoxication.

**8. Criminal Law § 26; Homicide § 31— felony-murder — separate punishment for felony — error**

Since arson was an essential and indispensable element in the State's proof of murder committed in the perpetration of the felony of arson, it afforded no basis for additional punishment, and the trial court erred in failing to arrest the judgment.

**9. Constitutional Law § 36; Homicide § 31— first degree murder — death penalty proper**

Defendant's constitutional and statutory rights were not violated by the imposition of the death penalty in this first degree murder case.

Chief Justice SHARP and Justices COPELAND and EXUM dissenting as to the death sentence.

APPEAL by defendant under G.S. 7A-27 (a) from *Hall, J.,* at the February 1974 Criminal Session of ROBESON Superior Court.

Defendant was convicted of arson and of five counts of murder in the first degree. A sentence of death was imposed on the arson charge and on each of the five murder charges.

These charges arose from a fire that destroyed a house at 641 East Wilmington Street in Maxton, North Carolina, during the early morning of 16 December 1973, and killed five small children who were sleeping in the house at the time.

State v. McLaughlin

Tilisa Jones testified that she was seventeen years of age, and on Sunday, 16 December 1973, was living in the house on East Wilmington Street with her mother Lewbertha Jones and ten other children, ranging from two to fourteen years of age. Her mother left the house on Saturday night, 15 December 1973, leaving her in charge. After her mother left, Tilisa also left for a while, leaving her fourteen-year-old cousin Rosie in charge. When she returned at approximately 11:00 p.m., some of the younger children had fallen asleep. She put Tywana Yulette Jones, Carla Daneise Malloy, Checo Spectus Jones, Jamar Leonco Jones and Mark Teral Malloy to bed and at that time these children were all in good health. She and some of the older children watched television until after the late show and then went to bed. At that time the room was cold because the fire in the pot-bellied stove had gone out. Demeatrice, her nine-year-old sister, woke her later in the night telling her the house was on fire. Tilisa could see nothing but fire and smoke as she left the house through a window. She heard Demeatrice calling, and returned to the house and pulled her out of a window. She did not go back into the house as she had been burned. She did go next door and call the fire department. By that time this house was also on fire. Later she fainted. She did not see the five younger children again after she put them to bed.

Lewbertha Jones testified that on the date in question she lived in the house on East Wilmington Street with her children, grandchildren and niece, and that Carla Malloy, her daughter (six years of age), Mark Malloy, her son (four years of age), Jamar Jones, her grandson (three years of age), Checo Jones, her grandson (two years of age), and Tywana Jones, her daughter (two years of age), all died in the fire.

Lewbertha further testified that on 15 December 1973 she left home about 9:30 or 10:00 p.m. She stopped by Ziegler's Cafe for a pack of cigarettes. The defendant came in and she left and went to McRae's Place across the street. She was sitting at a table with Ada Pearl Monroe when defendant came in, walked up to the counter, and then came over to the table where she was sitting. Defendant began cursing her and pulling at her clothes. She told him to leave and went to the counter. Defendant followed so she returned to the table. The defendant continued pulling on her and cursing her. Finally, she hit him on the head with a coke bottle. Defendant then said, "Bitch, I am going to burn your damn house and your mother fucking baby," and

walked out. After that she stayed and talked for a while. As she left to go home, she could see a fire in the direction of her house. When she got there the home was on fire. She then fainted.

On the night before the fire, defendant had drawn a pistol on her and she had knocked the pistol from his hand and hit him with a bottle.

Tony Wright, a friend of Lewbertha's, testified that he was present at McRae's Place on the night of 15 December 1973 and heard defendant curse Lewbertha and threaten to burn her home.

Ada Pearl Monroe testified that she was sitting with Lewbertha at McRae's Place on the night of 15 December 1973 and that defendant was pulling on Lewbertha's clothes, cursing her, and threatening to burn her home.

Daisy Blue testified that she was at McRae's Place and saw Lewbertha and defendant arguing but left before Lewbertha hit him with a bottle. She went to a house behind the store and talked and sang with friends. As she was getting in a car to leave around 3:30 a.m., defendant came up "walking sort of speedy like" and said, "I set the damn house, Lewbertha's damn house on fire." She hurried to Lewbertha's house and found it on fire.

Kenneth Bullard of the Maxton Police Department testified that he investigated the fire at Lewbertha's house on the morning of 16 December. When he arrived only Lewbertha's house was burning. He helped a neighbor move objects from her house, but soon it and another adjacent house caught fire. Later, as all three houses were burning, he noticed a scramble up the street and "a lot of cussing going on." Defendant came running by and Bullard could smell alcohol. He did not know what might happen to defendant if he let him go, so he arrested him for public drunkenness. While defendant was in the police car, a woman came to the window and said defendant had "burned down the house." The defendant replied, "Damn right I burned it down."

Defendant was taken to the police station and locked up between 5:30 and 6:00 a.m.

Lawrence Jackson, Jr., testified that he is in the funeral business. He arrived at the site of the burned house around

9:00 a.m. on 16 December. Lewbertha's house was completely burned as were the houses on each side. He found the remains of five small human bodies in the ruins of Lewbertha's house.

Franklin D. Johnson, an agent for the State Bureau of Investigation, testified that after viewing the scene of the fire he went to the Maxton Police Department to talk to defendant. Defendant was taken by Deputy Sheriff Hubert Stone to the sheriff's office in Lumberton for questioning. There defendant was read his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), and defendant stated he understood them. He then signed a waiver of these rights and answered questions from 12:20 p.m. until 1:30 p.m. Defendant admitted going to Lewbertha's house but denied setting it on fire. Defendant was questioned again around 6:30 p.m. He was again read his rights and another waiver was signed. Defendant then admitted that he had burned the house because he was mad at Lewbertha. Defendant said Lewbertha had once been his girl friend, that she had a child by him, and that he occasionally gave her money to help support the children. He also said he used rags and papers found on the back porch to set the house on fire.

Other testimony by Johnson served to corroborate the testimony of Lewbertha Jones, Tony Wright and Daisy Blue.

Deputy Sheriff Hubert Stone of the Robeson County Sheriff's Department testified in corroboration of Agent Johnson. He further testified that, after the first interrogation had ended about 1:30 p.m. on 16 December, defendant told him that he burned the house and asked him to come back later and he would tell the truth. Around 6:30 p.m. defendant confessed and signed a full statement.

Defendant did not testify or offer evidence.

Other facts pertinent to decision are set out in the opinion.

*Attorney General Robert Morgan, Deputy Attorney General James F. Bullock, and Associate Attorneys Austin B. Campbell and Ralf F. Haskell for the State.*

*Fred L. Musselwhite for defendant appellant.*

MOORE, Justice.

The murder indictments in these cases were drawn under G.S. 15-144. Defendant, before trial, filed a motion for a bill

of particulars requiring the State to make an election as to whether the murders were done with premeditation and deliberation, or in the perpetration or attempt to perpetrate arson. Defendant contends it was error for the court to overrule this motion and to charge the jury that they could return a verdict of guilty of murder in the first degree if they found from the evidence beyond a reasonable doubt that the killings were done with malice and after premeditation or deliberation, or that the killings were done in the perpetration or attempt to perpetrate arson.

G.S. 14-17 in part provides:

"A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, kidnapping, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death. . . . "

G.S. 15-144 provides:

"In indictments for murder and manslaughter, it is not necessary to allege matter not required to be proved on the trial; but in the body of the indictment, after naming the person accused, and the county of his residence, the date of the offense, the averment 'with force and arms,' and the county of the alleged commission of the offense, as is now usual, it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law; and it is sufficient in describing manslaughter to allege that the accused feloniously and willfully did kill and slay (naming the person killed), and concluding as aforesaid; and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder or manslaughter, as the case may be."

[1]  A bill of indictment drawn under G.S. 15-144 is sufficient to sustain verdicts of guilty of murder in the first degree if the jury finds from the evidence and beyond a reasonable doubt that defendant killed the deceased with malice, after premeditation and deliberation, or that he killed the deceased in the per-

State v. McLaughlin

petration or attempt to perpetrate any arson, rape, robbery, burglary, or other felony. *State v. Moore,* 284 N.C. 485, 202 S.E. 2d 169 (1974); *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972); *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435 (1970).

**[2]** If a defendant is charged with murder in the first degree by a bill of indictment drawn under G.S. 15-144 and desires to know whether the State relies on proof the killing was done with premeditation or deliberation, or in the perpetration or attempt to perpetrate a felony, he should apply for a bill of particulars as provided in G.S. 15-143 (repealed by Session Laws of 1973, c. 1286, s. 26, effective July 1, 1975). *State v. Haynes, supra.*

The function of such a bill of particulars is (1) to inform the defense of the specific occurrences intended to be investigated on the trial and (2) to limit the course of the evidence to the particular scope of inquiry. *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973); *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802 (1967); *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967).

The granting or denial of motions for a bill of particulars is within the discretion of the court and is not subject to review except for palpable and gross abuse thereof. *State v. Cameron, supra; State v. Spence, supra; State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967).

**[3]** The arson indictment in this case sets out the county in which the alleged offense occurred, the date of the occurrence, the street address of the house alleged to have been burned and the names of the occupants therein at the time.

The murder indictments each give the date and the county where the offense was alleged to have occurred and the name of the alleged victim. The names of those alleged to have been murdered are the same as those alleged to have been occupants of the house when the fire was set. Defendant was familiar with the house involved and its occupants, having visited and slept there on occasions. All the information surrounding the commission of the crimes was contained in the bills of indictment and was well known to defendant. Furthermore, the solicitor announced that he would make out a case of premeditation and deliberation and would also make out a case of homicide in the

perpetration of a felony, so defendant was on notice as to all elements of the charges against him and as to how the State planned to proceed. Under these circumstances, defendant has failed to show any abuse of discretion by the trial court in denying his motion for a bill of particulars.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. A specific intent to kill is a necessary constituent of the elements of premeditation and deliberation in first degree murder. *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858 (1969). Premeditation and deliberation are not usually susceptible of direct proof and are therefore susceptible of proof by circumstances from which the facts sought to be proven may be inferred. As stated in *State v. Walters,* 275 N.C. 615, 624, 170 S.E. 2d 484, 490 (1969) :

> " 'Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are : Want of provocation on the part of deceased. *State v. Matheson,* 225 N.C. 109, 111, 33 S.E. 2d 590; *State v. Hammonds,* 216 N.C. 67, 75, 3 S.E. 2d 439; *State v. Buffkin,* 209 N.C. 117, 126, 183 S.E. 543. The conduct of defendant before and after the killing. *State v. Lamm,* 232 N.C. 402, 406, 61 S.E. 2d 188; *State v. Chavis,* 231 N.C. 307, 311, 56 S.E. 2d 678; *State v. Harris,* 223 N.C. 697, 701, 28 S.E. 2d 232. Threats and declarations of defendant before and during the course of the occurrence giving rise to the death of deceased. *State v. Dockery,* 238 N.C. 222, 224, 77 S.E. 2d 664; *State v. Hudson,* 218 N.C. 219, 230, 10 S.E. 2d 730; *State v. Hawkins,* 214 N.C. 326, 331, 199 S.E. 284; *State v. Bowser, supra* (214 N.C. 249, 199 S.E. 31) . . . . ' "

In the present case, several witnesses for the State testified that prior to the fire defendant said he was going to burn Lewbertha's house and, in additon, Lewbertha testified that defendant said he was going to burn her house and her baby. After the fire was set defendant made the statement that he had "burned [the house] down." From this evidence, the jury could find that the defendant acted with premeditation and deliberation.

Under G.S. 14-17, a murder committed in the perpetration or attempt to perpetrate arson is murder in the first degree irrespective of premeditation or deliberation, or malice afore-

thought. *State v. Hairston,* 280 N.C. 220, 185 S.E. 2d 633 (1972) ; *State v. Thompson, supra.*

**[4]** We hold that the evidence in these cases was sufficient to permit the jury to find that defendant committed premeditated murder or murder in the perpetration or attempt to perpetrate arson. Therefore, the trial court did not err in submitting both to the jury.

By his next assignment of error defendant contends that the trial court erred in overruling the defendant's motion for nonsuit at the close of the State's evidence and at the close of all the evidence.

The evidence in the present case shows that defendant announced to several witnesses his intention to burn the house and that shortly after the fire he told Daisy Blue that he had "burned Lewbertha's damn house." He freely and fully confessed to police officers that he had burned the house. His statement closely paralleled the other evidence against him.

As we said in *State v. McNeil,* 280 N.C. 159, 161-62, 185 S.E. 2d 156, 157 (1971) :

> " . . . Motion to nonsuit requires the trial judge to consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608 (1971). 'Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled.' *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968)."

*Accord, State v. Tillman,* 269 N.C. 276, 152 S.E. 2d 159 (1967) ; *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374 (1965).

The evidence in this case clearly meets that standard and was properly submitted to the jury. This assignment is overruled.

Defendant next contends that the trial court erred in failing to instruct the jury on the law of intoxication as a defense, asserting that there was evidence from which the jury could have concluded that defendant was so intoxicated that he

was incapable of forming criminal intent to commit the crimes of arson and murder in the first degree.

**[5]** Except where a crime requires a showing of specific intent, voluntary intoxication is not a defense to a criminal charge. *State v. Bunn,* 283 N.C. 444, 196 S.E. 2d 777 (1973) ; *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560 (1968) ; *State v. Cureton,* 218 N.C. 491, 11 S.E. 2d 469 (1940) ; *State v. Murphy,* 157 N.C. 614, 72 S.E. 1075 (1911). *See, Annot.,* 8 A.L.R. 3d 1236 (1966).

**[6]** Specific intent is not an element of the crime of arson. 5 Am. Jur. 2d, Arson and Related Offenses § 10 (1962) ; 6 C.J.S., Arson § 3; *State v. Thomas,* 241 N.C. 337, 85 S.E. 2d 300 (1955) ; *State v. Cash,* 234 N.C. 292, 67 S.E. 2d 50 (1951) ; *State v. Anderson,* 228 N.C. 720, 47 S.E. 2d 1 (1948). *See also,* Perkins on Criminal Law 217 (2d ed. 1969). Therefore, intoxication may not be shown to negative any elements of arson.

However, specific intent to kill is a necessary constituent of the elements of premeditation and deliberation in first degree murder, and a showing of legal intoxication to the jury's satisfaction will mitigate the offense to murder in the second degree. *State v. Bunn, supra; State v. Wilson,* 280 N.C. 674, 187 S.E. 2d 22 (1972) ; *State v. Propst, supra; State v. Cureton, supra.*

As stated by Justice Barnhill, later Chief Justice, in *State v. Cureton, supra:*

". . . No inference of the absence of deliberation and premeditation arises as a matter of law from intoxication; and mere intoxication cannot serve as an excuse for the offender. The influence of intoxication upon the question of existence of premeditation depends upon its degree and its effect upon the mind and passion. For it to constitute a defense it must appear that the defendant was not able, by reason of drukenness, to think out beforehand what he intended to do and to weigh it and understand the nature and consequence of his act."

And, as we said in *State v. Shelton,* 164 N.C. 513, 79 S.E. 883 (1913) :

"All the authorities agree that to make such defense available the evidence must show that *at the time of the*

*killing* the prisoner's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill."

[7]    In the absence of evidence of intoxication to a degree precluding the ability to form a specific intent to kill, the court is not required to charge the jury thereupon. *State v. Cureton, supra.* The question in this case is whether there was evidence that defendant was intoxicated to the extent that his ability to form such specific intent was overthrown, thus necessitating an instruction on intoxication by the trial judge. We think not.

There was ample evidence that defendant had been drinking on the night in question.

Lewbertha Jones testified:

"I have known Alexander McLaughlin for about three years. I have had occasion to see him when he was both drunk and sober. I did not see him drinking that night. In my opinion, having known him for some period of time I would say that he was not drunk, but acted like he had been drinking some. He acted like it. I don't know whether he had or not. . . . I did not see Alexander McLaughlin take a drop of liquor that night. He was acting like he was drinking. I did not get close enough to him to smell it on his breath."

Tony Wright testified:

"I observed McLaughlin closely at the McRae place. I could not tell whether or not he had been drinking. He was not drunk."

Daisy Blue testified:

"I have had occasions to see him when he has been both drunk and sober. In my opinion, Alexander McLaughlin was not drunk that night. 'He wasn't what you say drunk.' He had had a few drinks.

\*    \*    \*

"At approximately 3:30 o'clock, he was not acting any different in any way except walking fast. He did not seem to stagger. In my opinion I do not think he was drunk. He didn't act to be drunk, what you say drunk. . . ."

Kenneth Bullard testified:

". . . I noticed some kind of scramble back up the street, maybe as far as from her to the door. There was a lot of cussing going on and I saw Mr. McLaughlin running by me. When he got in front of me he stopped. He had been drinking some and there were some boys following him. McLaughlin stopped in front of my car. I could tell that he had been drinking by the way he stood. He was pretty close and I could smell it. I placed him under arrest for public drunkenness. He was not as drunk as some I have arrested for being drunk.

            *     *     *

"Q. (By Mr. Britt) : Well, was he really drunk on this occasion?

            *     *     *

"THE WITNESS: *No, he wasn't really drunk.* (Emphasis added.)

            *     *     *

"I issued a warrant for the defendant's arrest for public drunkenness. I arrested the defendant for public drunkenness. I did not know what might happen to him if I let him go. . . ."

Franklin Johnson testified that defendant stated:

". . . [H]e had been drinking since he had gotten into Maxton and was drinking beer and whiskey. . . ."

Hubert Stone testified that defendant stated to him:

"I had been drinking beer and some whiskey. Later on we began to argue at each other. We separated and later we both got together at William McRae's Place, just off Highway 74, near the hotel. We started arguing again there. It was about 2:00 or 3:00 o'clock. During the argument Lewbertha Jones hit me in the head with a bottle. When she hit me, there was a crowd of people in there. It made me mad. I then told her that I would burn her house. I then got out, went outside of the building and went to Lewbertha's house across the railroad walking. When I got to the house I saw the front porch light burning, a light in her bedroom burning. I believe the light on the back porch was burning. I went around the house to the back

State v. McLaughlin

porch. I took my matches out of my pocket and light [sic] some rags and paper that was there on the back porch. I then saw it was burning and left and went back to Willie's Place where I had left Lewbertha."

None of the foregoing is evidence that defendant's mind was so intoxicated and his reason so overthrown that defendant could not form a specific intent to kill. At no time did defendant say he was so drunk he didn't know what he was doing. To the contrary, he recited in detail his actions on this occasion.

Defendant contends, however, that *State v. Propst, supra,* is authority for his position that the trial judge was required to instruct on intoxication in this case. In *Propst,* however, defendant had been medically diagnosed as paranoid, had previously been medically determined to be unable to understand the charges against him, and had been committed to Dorothea Dix Hospital for treatment. Further, defendant in that case had drunk an entire fifth of whiskey shortly before the murder, "had really been tore up with a bad case of the nerves the past several days," "had been complaining with his head," had delusions about being persecuted, and, according to expert testimony, had lost contact with reality.

We find no such evidence of defendant's inability to form a specific intent to kill in this case. This assignment is overruled.

[8] Defendant next assigns as error the court's failure to arrest judgment in the arson charge in that the arson charge was embraced and made a part of the five charges of murder in the first degree. We believe there is merit to this contention.

In *State v. Moore, supra,* the indictment, drawn under G.S. 15-144, charged defendant with killing with malice, premeditation and deliberation. Defendant was also charged with armed robbery. The evidence against him on the murder charge disclosed a killing in the perpetration of robbery. The trial court had charged that a verdict of first degree murder could be rendered upon a finding beyond a reasonable doubt that the killing was done in the perpetration or attempt to perpetrate a robbery. The jury found the defendant guilty of both murder and armed robbery. On appeal, this Court vacated the armed robbery conviction on the basis that it had been merged into the murder conviction.

State v. McLaughlin

In *State v. Thompson, supra,* at 215-16, 185 S.E. 2d at 675, involving convictions for felonious breaking and first degree murder, Chief Justice Bobbitt formulated the following succinct statement of the merger rule:

". . . [T]he separate judgment imposing punishment for felonious breaking and entering in addition to that imposed for the murder conviction cannot stand. When a person is convicted of murder in the first degree no separate punishment may be imposed for any lesser included offense. Technically, feloniously breaking and entering a dwelling is never a lesser included offense of the crime of murder. *However, in the present and similar factual situations, a cognate principle applies.* Here, proof that defendant feloniously broke into and entered the dwelling . . . was an essential and indispensable element in the State's proof of murder committed in the perpetration of the felony of feloniously breaking into and entering that particular dwelling. The conviction of defendant for felony-murder, that is, murder in the first degree without proof of malice, premeditation or deliberation, was based on a finding by the jury that the murder was committed in the perpetration of the felonious breaking and entering. *In this sense, the felonious breaking and entering was a lesser included offense of the felony-murder.* Hence, the separate verdict of guilty of felonious breaking and entering affords no basis for additional punishment. If defendant had been acquitted in a prior trial of the separate charge of feloniously breaking and entering, a plea of former jeopardy would have precluded subsequent prosecution on the theory of felony-murder. *State v. Bell,* 205 N.C. 225, 171 S.E. 50 (1933)." (Emphasis added.)

*See also, State v. Carroll,* 282 N.C. 326, 193 S.E. 2d 85 (1972) ; *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326 (1972).

The trial judge in the present case charged the jury to return a verdict of guilty of murder in the first degree if the State satisfied them beyond a reasonable doubt that the killings were done with premeditation and deliberation or in the perpetration or attempted perpetration of the felony of arson. We do not know, of course, which of the two theories the jury chose in finding defendant guilty of murder in the first degree. Undoubtedly, however, the jury considered the overwhelming evidence that the murders were committed in the perpetration of

arson. Accordingly, since the arson was an essential and indispensable element in the State's proof of murder committed in the perpetration of the felony of arson, it affords no basis for additional punishment. This assignment is sustained, and the judgment in the arson case is arrested.

Since we arrest judgment in the arson case, it is not necessary to determine whether the 1973 amendment to G.S. 14-58, changing the punishment for arson from death to life imprisonment, applies to this case.

[9] Defendant finally contends that his constitutional and statutory rights were violated by the imposition of the death penalty. The defendant's contentions with respect to the validity of the death sentence have been carefully considered and found to be without merit by this Court in a number of recent decisions. *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974); *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19 (1973). No useful purpose would be served by further discussion here. This assignment is overruled.

In view of the seriousness of the charge and gravity of the punishment imposed, we have carefully examined each of defendant's assignments of error. In the trial, verdicts and judgments, we find no errors except in the judgment in the arson case which we vacate.

As to the murder charges: No error.

As to the arson charge: Judgment arrested.

Chief Justice SHARP dissenting as to the death penalty.

The murders for which defendant was convicted occurred on 16 December 1973, a date between 18 January 1973, the day of the decision in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19, and 8 April 1974, the day on which the General Assembly rewrote G.S. 14-17 by the enactment of Chapter 1201 of the Session Laws of 1973. For the reasons stated by Chief Justice Bobbitt in his dissenting opinion in *State v. Jarrette,* 284 N.C. 625, 666, 202 S.E. 2d 721, 747 (1974)—an opinion in which Justice Higgins and I joined—I dissent as to the death sentence imposed upon defendant by the court below and vote to remand for the imposition of a sentence of life imprisonment. *See also*

the dissenting opinion of Chief Justice Bobbitt, and my concurrence therein, in *State v. Waddell, supra* at 453 and 476, 194 S.E. 2d at 30 and 47.

Justice COPELAND dissents as to death sentence and votes to remand for imposition of a sentence of life imprisonment for the reasons stated in his dissenting opinion in *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975).

Justice EXUM dissents from that portion of the majority opinion which affirms the death sentence and votes to remand this case in order that a sentence of life imprisonment can be imposed for the reasons stated in his dissenting opinion in *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975), other than those relating to the effect of Section 8 of Chapter 1201 of the 1973 Session Laws.