STATE OF NORTH CAROLINA v. LUICO CARL FLEMING, JR.

No. 62

(Filed 5 February 1979)

**1. Homicide § 4— first degree murder defined**

  Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17.

**2. Homicide § 5— second degree murder defined**

  Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation.

**3. Homicide § 6— voluntary manslaughter defined**

  Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation.

**4. Homicide § 6.1— involuntary manslaughter defined**

  Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, and without intention to kill or inflict bodily injury.

**5. Homicide § 4— malice defined**

      Malice is that condition of the mind which prompts one person to take the life of another intentionally without just cause, excuse or justification.

**6. Homicide § 15.2— evidence of malice**

      Circumstances immediately connected with the killing by defendant, the viciousness and depravity of his acts and conduct attending the killing are evidence of malice.

**7. Homicide § 30.2— murder case—submission of involuntary manslaughter—failure to submit voluntary manslaughter—no error**

      It was not error for the trial court in a murder prosecution to submit involuntary manslaughter with appropriate instructions and to exclude voluntary manslaughter from the list of permissible verdicts where the State's evidence tended to show that defendant chased the nude victim down the street and, when she fell, defendant straddled her and cut and slashed her numerous times, and defendant testified that the only reason he ran after the victim was because she was naked, that the victim dropped the knife and he picked it up on impulse, that when the victim stumbled and fell, defendant tried to pick her up but she kicked him, gained possession of the knife and tried to cut him, and that he put his legs across her solely to hold her in place and, while attempting to ward off her blows, he "pushed the knife too hard and it hit her," since defendant's testimony, if believed, would support a finding of either (1) an accidental killing or (2) perhaps an unintentional homicide resulting from the reckless use of a deadly weapon under circumstances not evidencing a heart devoid of a sense of social duty.

      Justice BROCK did not participate in the consideration or decision of this case.

DEFENDANT appeals from judgment of *Rousseau, J.*, 3 April 1978 Session, FORSYTH Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree murder of Debra Jean Carpenter on 21 December 1977.

The State offered evidence tending to show that on 21 December 1977 at about 10:30 a.m. Debra Jean Carpenter was seen running nude down East 31st Street in Winston-Salem. She was bleeding about her head and a man, later identified as defendant, was chasing her. She was "hitting backwards" at the man chasing her and begging residents along the street for help. The woman fell and defendant straddled her. One State's witness described what followed in these words: ". . . While straddling her he was moving his arm up and down and around just cutting . . . as if he had . . . killed a chicken." Defendant remained astride the

victim for about five minutes while cutting and slashing her as described above. A pathologist testified that examination of Debra Jean Carpenter's body revealed multiple wounds in the head, neck, chest, back, shoulders and hands. There were thirty-three stab wounds and two incision wounds on the body. Death was produced by the multiple stab wounds.

Defendant testified that he and Debra Jean Carpenter were not married but had been living together and had a small daughter named Tish. On the morning of 21 December 1977 he went to the home of the victim's sister, where Debra Jean lived, and asked her where she had been the previous night. After first saying she had spent the night at her sister-in-law's house, Debra Jean admitted that she had been out with her ex-boyfriend. They talked and thereafter had sexual relations. Defendant asked permission to keep his little girl, Tish, during the day and was refused. Debra Jean then went to the kitchen and returned with a knife which she swung at defendant, cutting his hand when he threw it up to block the blow. Defendant struck her above the eye and struck her again when she continued to swing the knife. She fell into the bathroom striking her face on the sink and bled profusely. She then returned to the bedroom and told defendant she was going to stop being unfaithful to him. Debra Jean went back to the bathroom and stopped her bleeding. Shortly thereafter she and defendant reconciled and had sexual relations again. When her face began bleeding again he sent her to the bathroom to clean up so he could take her to the hospital. He heard the shower running and then heard the window being opened. On investigation he discovered that she had gone out the window and was running down the street naked. He ran after her to bring her back inside. While fleeing, Debra Jean dropped the knife she was carrying. On impulse, defendant picked it up but had no intention of hurting her. When she stumbled and fell defendant tried to pick her up but she kicked him and he "put his leg across her to hold her in place." She somehow got the knife and swung it at him again and "he pushed the knife too hard and it hit her." Thereafter she stopped struggling and stopped moving. He panicked, ran back to the house, got some clothes and left in her car.

The trial court submitted, as permissible verdicts, guilty of murder in the first degree, guilty of murder in the second degree,

guilty of involuntary manslaughter or not guilty. The jury convicted defendant of second degree murder and he was sentenced to life imprisonment. He appealed to the Supreme Court assigning as error the failure of the court to submit voluntary manslaughter as a permissible verdict and charge the jury with respect thereto.

*Rufus L. Edmisten, Attorney General, by Isaac T. Avery III, Assistant Attorney General, for the State.*

*Edward B. Higgins, Jr., attorney for defendant appellant.*

HUSKINS, Justice.

[1] Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17; *State v. Lamm*, 232 N.C. 402, 61 S.E. 2d 188 (1950).

[2] Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963).

[3] Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Benge*, 272 N.C. 261, 158 S.E. 2d 70 (1967).

[4] Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury. *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971). *Compare State v. Rummage*, 280 N.C. 51, 185 S.E. 2d 221 (1971).

The jury should be instructed on a lesser included offense when, and only when, there is evidence from which the jury could find that such included crime of lesser degree was committed. *State v. Ward*, 286 N.C. 304, 210 S.E. 2d 407 (1974); *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971). "The *presence of such evidence* is the determinative factor." *State v. Hicks*, 241 N.C. 156, 84 S.E. 2d 545 (1954).

[5, 6] Here, all of the State's evidence tends to show a killing with malice. Malice is that condition of the mind which prompts one person to take the life of another intentionally without just cause, excuse or justification. "Malice is not only hatred, ill-will, or spite, as it is ordinarily understood—to be sure that is malice—but it also means that condition of mind which prompts a per-

son to take the life of another intentionally without just cause, ex-cuse, or justification." *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969). Malice is said to exist as a matter of law "whenever there has been an unlawful and intentional homicide without ex-cuse or mitigating circumstance." *State v. Baldwin*, 152 N.C. 822, 68 S.E. 148 (1910). Circumstances immediately connected with the killing by defendant, the viciousness and depravity of his acts and conduct attending the killing, are evidence, of malice and properly considered. *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769, *cert. denied*, 368 U.S. 851 (1961). A malicious killing cannot be volun-tary manslaughter.

[7]   The testimony of State's witness Sharon Albright places de-fendant and his victim about a block away when she first saw them. She saw the man when he "went around the girl's neck"; and while the girl was fighting to get away and fell, the man straddled her and his arm was moving up and down and around "just cutting . . . as if he had . . . killed a chicken." While this was transpiring, the victim held up her hands and said, "Lady, oh Lord, please help me."

State's witness Jo Anne Carpenter testified that when Debra Jean fell defendant straddled her and stayed on top cutting her "a good five minutes." She said defendant had a knife that looked like a butcher knife.

On the other hand, defendant testified that the only reason he ran down the street after the victim was because she was nak-ed; that he picked up the knife on impulse and had no intention of hurting her; that she stumbled and fell and when he tried to pick her up she kicked him and, having again obtained possession of the knife, tried to cut him; that he put his legs across her solely for the purpose of holding her in place and, while attempting to ward off her blows, he "pushed the knife too hard and it hit her."

Clearly, defendant's evidence, taken as true, neither justifies nor requires a charge on voluntary manslaughter. It does not in-dicate that the killing resulted from the use of excessive force in the exercise of the right of self-defense, nor that it was the result of anger suddenly aroused by provocation which the law deems adequate to dethrone reason temporarily and to displace malice. *See State v. Ward, supra.* Defendant in his testimony makes no contention that he cut the deceased in the heat of passion or in

self-defense. He says the cutting was not intentional. If believed, his testimony would support a finding of either (1) an accidental killing or (2) perhaps an unintentional homicide resulting from the reckless use of a deadly weapon under circumstances not evidencing a heart devoid of a sense of social duty. In the setting created by such testimony, *and with credibility a matter for the jury*, it was not error for the court to submit involuntary manslaughter with appropriate instructions and exclude voluntary manslaughter from the list of permissible verdicts. Defendant's first and only assignment of error is therefore overruled.

For the reasons stated the verdict and judgment must be upheld.

No error.

Justice BROCK did not participate in the consideration or decision of this case.